[No. B166819. Second Dist., Div. Three. Nov. 10, 2004.]

FEDERATION OF HILLSIDE AND CANYON ASSOCIATIONS et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Lawrence Teeter for Plaintiffs and Appellants.

Rockard J. Delgadillo, City Attorney, Susan D. Pfann and Jack L. Brown, Assistant City Attorneys, for Defendants and Respondents.

**OPINION**

**CROSKEY, Acting P. J.**—Federation of Hillside and Canyon Associations and Coalition Against the Pipeline (collectively Petitioners) appeal the denial of their petition for writ of mandate against City of Los Angeles and Los Angeles City Council (collectively the city). Petitioners challenged the city's approval of a revised "General Plan Framework" and the city's findings and statement of overriding considerations under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) in connection with that approval. We conclude that Petitioners have not shown error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Prior General Plan Framework, EIR, and CEQA Findings*

The General Plan Framework, an element of the city's general plan, states policies, objectives, and goals for the long-term growth of the city. The

General Plan Framework influences but is separate from other general plan elements, which together comprise the general plan. The city completed a proposed General Plan Framework and a draft environmental impact report (EIR) and provided public notice and an opportunity to review and comment beginning in January 1995.

The proposed General Plan Framework included proposed operational and physical improvements to traffic systems and infrastructure, policies to encourage the use of public transit and reduce vehicle trips, and other measures to reduce traffic congestion and improve accessibility. It identified several programs necessary to implement the General Plan Framework, including a proposed "Transportation Improvement Mitigation Plan" (TIMP), described as a program to mitigate the transportation impacts of the General Plan Framework's land use and growth policies. It also called for the development of a general plan transportation element, superseding the prior circulation element, to describe specific proposals in greater detail. The General Plan Framework provided for the city to continue to monitor population and employment growth and the effects on transportation.

The draft EIR analyzed the environmental impacts of the General Plan Framework, TIMP, and related planning and zoning code amendments. It stated that the General Plan Framework would result in significant increases in traffic congestion and would reduce average freeway speeds by as much as 50 percent by the year 2010. The draft EIR also stated, however, that the mitigation measures included in the TIMP would reduce those impacts to a level of insignificance. It also proposed further mitigation measures, including greater support for zero-emission and low-emission vehicles, greater expansion of bus and rail transit systems, and other measures. It stated that the mitigation measures would reduce the cumulative significant effects on transportation "to the extent feasible."

The city completed the proposed TIMP in February 1995, after it had circulated the proposed General Plan Framework and draft EIR. The city made the TIMP available to the public in February 1995 but did not provide formal public notice or recirculate the draft EIR at that time. The TIMP included several proposals to improve the existing transportation infrastructure and increase its capacity, provide additional rail and bus transit, and encourage greater use of public transit and telecommuting. The TIMP stated that to implement the proposals would require the cooperative efforts of several state, local, and federal public agencies together with the city at a cost of approximately $12 billion over 20 years. It stated that a substantial portion of the cost must be borne by state and regional agencies, and that a preliminary analysis indicated that the city's portion of the cost would far exceed its anticipated revenues, including revenues from Proposition C local

return funds, gasoline taxes, development fees, street dedications and improvements related to private development, and the city's general fund.

The city produced a final EIR in June 1996 and an amended General Plan Framework in July 1996. Both documents cited and relied in large part on the TIMP mitigation measures to alleviate the significant effects on transportation. The final EIR stated that the project-specific effects on transportation were significant but could be substantially reduced through mitigation. It also stated, however, that even with the mitigation measures the cumulative adverse impacts on the Los Angeles region would be significant and unavoidable.

The city also prepared a document entitled "Proposed CEQA Findings and Statement of Overriding Considerations" (Proposed Findings) in July 1996. The Proposed Findings stated that the General Plan Framework's land use policy and the mitigation measures identified in the TIMP and final EIR would avoid or substantially reduce the significant impacts on transportation, but that even with mitigation the cumulative impact on transportation would be significant and unavoidable. The Proposed Findings discussed several alternatives to the General Plan Framework, concluded that they would not achieve the city's central objectives and were infeasible, and found that specific overriding considerations outweighed the unavoidable significant effects on the environment.

The city council held a public hearing on the proposal in July 1996 and amended the General Plan Framework. After further public hearings before the planning commission and city council, the city approved the General Plan Framework, adopted the Proposed Findings, and certified the final EIR at a public hearing in December 1996.

### 2. *Prior Litigation*

Petitioners filed a petition for writ of mandate in the superior court in January 1997, challenging the sufficiency of the EIR and the city's failure to recirculate the draft EIR after releasing the TIMP. They argued that in light of the statement in the TIMP that the city's projected revenues were inadequate to meet its share of the TIMP's substantial costs, the mitigation measures upon which the draft EIR relied were infeasible, that the mitigation measures depended upon the cooperation of other public agencies and funding from those agencies was highly speculative, and that there was no substantial evidence to support the finding that the significant effects on transportation would be mitigated. They also argued that there was no substantial evidence to support the city's finding that water resources would be sufficient, that the EIR did not adequately address feasible alternative plans and the impact of

population growth, and that the city's failure to recirculate the draft EIR after the TIMP was released invalidated the EIR. The trial court concluded that the city was required to circulate the TIMP for review and comment and ordered the city to do so, but rejected Petitioners' other challenges to the EIR. Petitioners and the city appealed the judgment.

The city complied with the trial court's order by circulating the TIMP for review and comment beginning in November 1998, while the appeal was pending. The city amended the final EIR by adding its responses to comments on the TIMP and certified the amended final EIR in September 1999.

On appeal, we determined that there was no substantial evidence to support the city's finding that transportation impacts would be mitigated because the city had acknowledged that funding for the TIMP was highly uncertain and made no provision to ensure that the TIMP would actually be implemented. (*Federation of Hillside & Canyon Associations v. City of Los Angeles* (2000) 83 Cal.App.4th 1252, 1261–1262 [100 Cal.Rptr.2d 301].) We rejected Petitioners' challenges to other findings and to the EIR. (*Id.* at pp. 1262–1265.) We stated, "We find no fault with the EIR itself, but only with the GPF and the city's finding on transportation impacts." (*Id.* at p. 1266.) We concluded that the city's appeal was moot because the city had complied with the trial court's order to circulate the TIMP. (*Id.* at p. 1266.)

We therefore reversed the judgment denying the petition for writ of mandate and remanded the matter with directions to the superior court to grant the petition and order the city to vacate its approval of the General Plan Framework and its finding on transportation impacts. (*Federation of Hillside & Canyon Associations v. City of Los Angeles, supra*, 83 Cal.App.4th at pp. 1266–1267.) We stated, "The city may comply with CEQA by amending the GPF so that effective mitigation measures are required as a condition of the development allowed under the GPF or by restricting the scope of development and then making a finding under section 21081, subdivision (a)(1), or by making a finding of overriding considerations as to the significant effects on transportation. [Fn. omitted.]" (*Id.* at p. 1266.) On remand, the superior court ordered the city to vacate its approval of the General Plan Framework and to "comply with the California Environmental Quality Act," and quoted the foregoing language from our opinion.

### 3. *Revised General Plan Framework and CEQA Findings*

The city council adopted several amendments to the General Plan Framework before we filed our opinion in *Federation of Hillside & Canyon Associations v. City of Los Angeles, supra*, 83 Cal.App.4th 1252. Petitioners do not discuss or challenge those amendments. After our opinion and a new

judgment by the superior court on remand, the city vacated the General Plan Framework, adopted new CEQA findings and a statement of overriding considerations, and readopted the General Plan Framework in August 2001.

The new findings state that the General Plan Framework will result in potentially significant impacts that will be mitigated in the areas of housing/population, solid waste, wastewater, water resources, utilities, flood control/drainage, police, recreation and open space, and geologic/seismic conditions, and unavoidable significant impacts in the areas of land use, urban form, air quality, and biological resources. The findings also state that the population, employment, and housing growth provided for in the General Plan Framework will result in significant impacts on transportation, that the mitigation measures in the TIMP and other mitigation measures were incorporated into the general plan's transportation element in September 1999, and that, contrary to the statement in the TIMP, the city will be able to fund its share of the costs for those measures. The findings state that those mitigation measures also will require funding from county, state, and federal government sources, however, and that adequate funding from those sources is a reasonable expectation but cannot be guaranteed. Citing our prior determination in *Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th 1252 that the city had failed to ensure that the mitigation measures would actually be implemented, the findings state that because the city cannot guarantee adequate funding from other government sources, the city has determined that the transportation mitigation measures are infeasible. The findings also state that the impacts on air quality will be significant and that full implementation of the TIMP would substantially lessen those impacts, but that unavoidable significant impacts will result if the TIMP is not fully implemented.

The city also adopted a statement of overriding considerations finding that the unavoidable significant environmental impacts, any potentially significant impacts due to the infeasibility of the TIMP and other transportation mitigation measures, and the cumulative adverse impacts are acceptable in light of particular project benefits. Among the benefits cited in the statement of overriding considerations are strengthening the city's economic base, providing greater employment opportunities for city residents, protecting the character of low-density residential neighborhoods while accommodating future housing needs, enhancing the city's role as a regional transportation hub, and accommodating regional growth more effectively and with less environmental impact than could other cities in the region.

### 4. *Trial Court Proceedings*

Petitioners filed a petition for writ of mandate in the superior court in September 2001 challenging the city's adoption of the General Plan Framework and the city's CEQA findings and statement of overriding considerations. The petition alleges that the General Plan Framework, findings, and statement of overriding considerations render the general plan's land use element inconsistent and noncorrelative with the circulation element in violation of Government Code section 65302, that the evidence does not support the findings and statement of overriding considerations in several respects, and that the city was required to revise and recirculate the EIR in light of the new findings and new information but failed to do so.

After a hearing on the merits, the superior court concluded that our statement in *Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th at page 1266, that "the city may comply with CEQA . . . by making a finding of overriding considerations as to the significant effects on transportation" was law of the case and therefore rejected Petitioners' challenges under CEQA. The trial court requested further briefing on whether the cause of action under Government Code section 65302 was barred by either the statute of limitations or res judicata. After further briefing and hearing, the trial court concluded, based on the same statement in our prior opinion, that this court intended to allow the city to determine that the General Plan Framework is preferable to the alternatives, that the court must defer to the city's determination as long as substantial evidence supports the determination, and that Petitioners' cause of action under Government Code section 65302 does not challenge the evidence supporting that determination. The court therefore denied the petition and entered judgment for the city in February 2003. Petitioners appeal the judgment.

### CONTENTIONS

Petitioners contend (1) the General Plan Framework provides no means to ensure that transportation infrastructure will be adequate to accommodate future population growth, and that inadequacy renders the land use and circulation elements of the general plan inconsistent and noncorrelative; (2) the city's finding that the TIMP and other measures to mitigate transportation impacts are infeasible due to the uncertainty of funding from sources other than the city amends the General Plan Framework in a manner that will have a different or more severe effect on the environment, so the city must revise and recirculate the EIR; (3) the city failed to consider alternative measures to ensure that development and population growth will not overburden the city's transportation infrastructure, so there is no basis for the statement of overriding considerations; (4) the evidence does not support the city's findings

concerning impacts on air quality, water resources, waste water, solid waste, open space, and utilities; and (5) the population and housing projections in the General Plan Framework and the EIR are based on outdated census data, so the evidence does not support the projections.

The city contends (1) Petitioners could have argued in the prior action that the general plan is internally inconsistent and noncorrelative but failed to do so, so res judicata bars that contention in this action; (2) the city did not revise the General Plan Framework in a manner that will have a different or more severe effect on the environment, so it had no obligation to revise and recirculate the EIR; (3) this court determined in the prior action that the city could adopt a statement of overriding circumstances on remand, and that determination is the law of the case, so Petitioners' challenge to the city's adoption of a statement of overriding considerations must fail; (4) the city's findings support the statement of overriding considerations; (5) the city had no obligation to consider additional mitigation measures, and collateral estoppel bars any challenge to the EIR; and (6) collateral estoppel bars Petitioners' challenges to policy statements in the EIR, challenges to the city's findings concerning impacts on water resources, waste water, solid waste, open space, and utilities, and the challenge to the data supporting the city's population and housing projections.

## DISCUSSION

### 1. The General Plan Is Not Internally Inconsistent or Noncorrelative

■ A city or county must adopt a "comprehensive, long-term general plan" for its physical development. (Gov. Code, § 65300.) The general plan must include "a statement of development policies and . . . objectives, principles, standards, and plan proposals" and elements addressing land use, circulation, housing, conservation, open space, noise, and safety. (Gov. Code, § 65302.) The general plan serves as a "charter for future development" (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 540 [277 Cal.Rptr. 1, 802 P.2d 317]) embodying fundamental policy decisions (*Citizens of Goleta Valley v. Board of Supervisors* (1990) 52 Cal.3d 553, 571 [276 Cal.Rptr. 410, 801 P.2d 1161]). The policies in a general plan typically reflect a range of competing interests. (*Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 142 [104 Cal.Rptr.2d 326].)

■ The land use element must designate the proposed general distribution and general location and extent of land uses, provide population density and building intensity standards, and identify areas subject to flooding. (Gov. Code, § 65302, subd. (a).) The circulation element must designate "the

general location and extent of existing and proposed major thoroughfares, transportation routes, terminals, any military airports and ports, and other local public utilities and facilities," and must be "correlated with the land use element of the plan." (*Id.*, subd. (b).)

■ A general plan and each of its elements must "comprise an integrated, internally consistent and compatible statement of policies for the adopting agency." (Gov. Code, § 65300.5.) Zoning and other decisions affecting land use and development also must be consistent with the general plan. (Gov. Code, § 65860, subd. (a); *Citizens of Goleta Valley v. Board of Supervisors, supra*, 52 Cal.3d at p. 570.)

■ A general plan is legally adequate if it substantially complies with the requirements of Government Code sections 65300 to 65307. (Gov. Code, § 65751.) " 'Substantial compliance . . . means *actual* compliance in respect to the substance essential to every reasonable objective of the statute,' as distinguished from 'mere technical imperfections of form.' [Citations.]" (*Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620].) A petitioner may challenge a general plan on the ground that it does not substantially comply with these statutory requirements by way of petition for writ of mandate under Code of Civil Procedure section 1085. (Gov. Code, § 65751.)

■ The adoption or amendment of a general plan is a legislative act. (Gov. Code, § 65301.5.) A legislative act is presumed valid, and a city need not make explicit findings to support its action. (*Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 522 [169 Cal.Rptr. 904, 620 P.2d 565]; *Corona-Norco Unified School Dist. v. City of Corona* (1993) 17 Cal.App.4th 985, 993 [21 Cal.Rptr.2d 803].) A court cannot inquire into the wisdom of a legislative act or review the merits of a local government's policy decisions. (*Selby Realty Co. v. City of San Buenaventura* (1973) 10 Cal.3d 110, 118 [109 Cal.Rptr. 799, 514 P.2d 111].) Judicial review of a legislative act under Code of Civil Procedure section 1085 is limited to determining whether the public agency's action was arbitrary, capricious, entirely without evidentiary support, or procedurally unfair. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499]; *Hernandez v. City of Encinitas* (1994) 28 Cal.App.4th 1048, 1070–1072 [33 Cal.Rptr.2d 875].) A court therefore cannot disturb a general plan based on violation of the internal consistency and correlation requirements unless, based on the evidence before the city council, a reasonable person could not conclude that the plan is internally consistent or correlative. (Cf. *A Local & Regional Monitor v. City of Los Angeles* (1993) 16 Cal.App.4th 630, 648 [20 Cal.Rptr.2d 228].)

██ Contrary to Petitioners' argument, the internal consistency and correlation requirements do not require a city or county to limit population growth or provide traffic management measures to ensure that its transportation infrastructure can accommodate future population growth. The Planning and Zoning Law (Gov. Code, § 65000 et seq.) does not require a city or county to avoid adverse impacts on transportation. Rather, the city has broad discretion to weigh and balance competing interests in formulating development policies, and a court cannot review the wisdom of those decisions under the guise of reviewing a general plan's internal consistency and correlation. (Cf. *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors, supra,* 87 Cal.App.4th at p. 142.)

*Concerned Citizens of Calaveras County v. Board of Supervisors* (1985) 166 Cal.App.3d 90 [212 Cal.Rptr. 273] (*Calaveras*) is not on point. In that case, the circulation element stated that state highways were inadequate to accommodate future traffic growth and stated clearly and repeatedly that there were no funds available to construct needed improvements. The land use element provided for a 46 percent growth in population over 10 years and substantial development, but failed to discuss and offered no proposals to mitigate the inadequacy of state highways, other than to lobby the state and federal governments for funding. (*Id.* at pp. 101–103.) The court stated that the correlation requirement of Government Code section 65302, subdivision (b), means that the circulation element must include measures addressing changed demands on transportation infrastructure caused by changes in land use, and concluded that the proposed highway improvements were not meaningful proposals because the county had acknowledged that there were no funds to construct the improvements. (*Calaveras, supra,* at pp. 100, 103.) The court concluded that the land use element was not correlated with and was inconsistent with the circulation element because the land use element provided for unlimited population growth yet the circulation element provided no measures either to satisfy the additional transportation needs or to limit growth if state highways were inadequate for future traffic. (*Id.* at p. 103.)

██ Petitioners cite *Calaveras, supra,* 166 Cal.App.3d 90, for the proposition that the city has an obligation either to limit population growth or to provide measures to manage increased traffic in the event that the TIMP is not fully funded. We do not construe *Calaveras* in that manner. Rather, we construe *Calaveras* to mean that the circulation element of a general plan must provide meaningful proposals to address changes reflected in the land use element, and the land use element must provide meaningful proposals to reflect changes reflected in the circulation element. The state highway improvements proposed in *Calaveras* could not reasonably be considered meaningful because in the circulation element the county clearly acknowledged its inability to fund the improvements. ██ Here, in contrast, the

general plan does not state, let alone state clearly, that funding for the TIMP will be unavailable. Rather, the city stated in its CEQA findings that the city will be able to fund its share of the TIMP costs. The city also concluded, based on prior funding levels, that the necessary funds from other governmental sources probably will be available, and found that the TIMP was infeasible only because the city could not guarantee the necessary funding from other governmental sources. Thus, the city's finding that the TIMP is infeasible is not a definitive statement that the funds will not be available. The finding also is not part of the general plan and therefore cannot make the general plan internally inconsistent or noncorrelative.

We therefore conclude that the superior court's rejection of Petitioners' challenge based on the internal consistency and correlation requirements was correct. Accordingly, we need not decide whether res judicata bars Petitioners' contention.

## 2. *CEQA Requirements*

■ A public agency must prepare an EIR or cause an EIR to be prepared for any project that it proposes to carry out or approve that may have a significant effect on the environment. (Pub. Resources Code, §§ 21100, subd. (a), 21151, subd. (a); Guidelines,[1] § 15064, subd. (a)(1).) The EIR must describe the proposed project and its environmental setting, state the objectives sought to be achieved, identify and analyze the significant effects on the environment, state how those impacts can be mitigated or avoided, and identify alternatives to the project, among other requirements. (Pub. Resources Code, §§ 21100, subd. (b), 21151; Guidelines, §§ 15124, 15125.)

■ The agency must notify the public of the draft EIR, make the draft EIR and all documents referenced in it available for public review, and respond to comments that raise significant environmental issues. (Pub. Resources Code, §§ 21091, subds. (a), (d), 21092; Guidelines, §§ 15087, 15088.) The agency also must consult with and obtain comments from other agencies affected by the project and respond to their comments. (Pub. Resources Code, §§ 21092.5, 21104, 21153; Guidelines, § 15086.) It must prepare a final EIR including any revisions to the draft EIR, the comments received from the public and other agencies, and responses to comments. (Guidelines, §§ 15089, subd. (a), 15132.)

---

[1] All references to Guidelines are to the CEQA Guidelines (Cal. Code Regs., tit. 14, § 15000 et seq.) developed by the Office of Planning and Research and adopted by the California Resources Agency. (Pub. Resources Code, §§ 21083, 21087.) "[C]ourts should afford great weight to the Guidelines except when a provision is clearly unauthorized or erroneous under CEQA." (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 391, fn. 2 [253 Cal.Rptr. 426, 764 P.2d 278] (*Laurel Heights I*).)

■ An agency may not approve a project that will have significant environmental effects if there are feasible alternatives or feasible mitigation measures that would substantially lessen those effects.[2] (Pub. Resources Code, §§ 21002, 21002.1, subd. (b); Guidelines, § 15021, subd (a)(2); *Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 134 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) An agency may find, however, that particular economic, social, or other considerations make the alternatives and mitigation measures infeasible and that particular project benefits outweigh the adverse environmental effects. (Pub. Resources Code, § 21081, subds. (a)(3), (b); Guidelines, § 15091, subd. (a)(3).) Specifically, an agency cannot approve a project that will have significant environmental effects unless it finds as to each significant effect, based on substantial evidence in the administrative record, that (1) mitigation measures required in or incorporated into the project will avoid or substantially lessen the significant effect; (2) those measures are within the jurisdiction of another public agency and have been adopted, or can and should be adopted, by that agency; or (3) specific economic, legal, social, technological, or other considerations make the mitigation measures or alternatives identified in the EIR infeasible, and specific overriding economic, legal, social, technological, or other benefits outweigh the significant environmental effects. (Pub. Resources Code, §§ 21081, 21081.5; Guidelines, §§ 15091, subds. (a), (b).) A finding that specific overriding project benefits outweigh the significant environmental effects (Pub. Resources Code, § 21091, subd. (b)) is known as a statement of overriding considerations. (Guidelines, § 15093.)

■ Thus, a public agency is not required to favor environmental protection over other considerations, but it must disclose and carefully consider the environmental consequences of its actions, mitigate adverse environmental effects if feasible, explain the reasons for its actions, and afford the public and other affected agencies an opportunity to participate meaningfully in the environmental review process. The purpose of these requirements is to ensure that public officials and the public are aware of the environmental consequences of decisions before they are made. (*Citizens of Goleta Valley v. Board of Supervisors*, *supra*, 52 Cal.3d at p. 564.) The EIR process also informs the public of the basis for environmentally significant decisions by public officials and thereby promotes accountability and informed self-government. (*Laurel Heights I*, *supra*, 47 Cal.3d at p. 392; *Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 935–936 [231 Cal.Rptr. 748, 727 P.2d 1029].)

---

[2] " 'Feasible' means capable of being accomplished in a successful manner within a reasonable period of time, taking into account economic, environmental, social, and technological factors." (Pub. Resources Code, § 21061.1.)

■ The agency must certify that its decisionmaking body reviewed and considered the information contained in the EIR, that the EIR reflects the agency's independent judgment and analysis, and that the EIR was completed in compliance with CEQA, before approving the project. (Pub. Resources Code, § 21082.1, subd. (c); Guidelines, § 15090.)

■ The standard of review of an agency decision under CEQA is abuse of discretion. Abuse of discretion means the agency did not proceed as required by law or there was no substantial evidence to support its decision. (Pub. Resources Code, §§ 21168, 21168.5; *Laurel Heights I, supra,* 47 Cal.3d at p. 392, fn. 5 ["the standard of review is essentially the same under either section"]; *Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1375 [43 Cal.Rptr.2d 170].) In reviewing the adequacy of an EIR, the court does not determine whether the agency's factual determinations were correct, but determines only whether they were supported by substantial evidence. (*Laurel Heights I, supra,* at pp. 392–393.) On appeal, we independently review the administrative record under the same standard of review that governs the trial court. (*Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th at p. 1259.)

3. *The City Was Not Required to Prepare a Subsequent EIR or Supplement to the EIR*

■ Public Resources Code section 21092.1 states that if "significant new information is added to an environmental impact report" after the agency has made the draft EIR available for public review and has consulted with other agencies but before the EIR is certified, the agency must make the revised EIR available for public review and must consult with the other agencies again before certifying the EIR.[3] Section 21092.1 applies only before an EIR is certified. (Pub. Resources Code, § 21092.1; Guidelines § 15088.5, subd. (a).)

■ Changes to a project or its surrounding circumstances made after an EIR has been certified for the project may require the preparation of a subsequent EIR or supplement to the EIR. The agency must prepare a subsequent EIR if (1) the project changes are substantial and require major revisions to the EIR due to either new significant environmental effects or a substantial increase in the severity of significant effects identified in the EIR; (2) substantial changes in the circumstances surrounding the project require

---

[3] "When significant new information is added to an environmental impact report after notice has been given pursuant to Section 21092 and consultation has occurred pursuant to Sections 21104 and 21153, but prior to certification, the public agency shall give notice again pursuant to Section 21092, and consult again pursuant to Sections 21104 and 21153 before certifying the environmental impact report." (Pub. Resources Code, § 21092.1.)

major revisions to the EIR; or (3) new information of substantial importance shows that the project will have a significant effect not discussed in the EIR, significant effects discussed in the EIR will be substantially more severe, mitigation measures or alternatives found to be infeasible will be feasible and would substantially reduce a significant effect, or mitigation measures or alternatives considerably different from those discussed in the EIR would substantially reduce a significant effect. (Pub. Resources Code, § 21166; Guidelines, § 15162, subd. (a).)

 The agency may prepare a supplement to the EIR in lieu of a subsequent EIR if only minor changes or additions to the EIR are necessary to address the project changes, changed circumstances, or new information. (Guidelines, § 15163, subd. (a).) An agency must provide the same notice and opportunity for public review of a subsequent EIR or supplement to an EIR as is required for a draft EIR. (Guidelines, §§ 15162, subd. (d), 15163, subd. (c).) We review the city's determination that the conditions requiring preparation of a subsequent EIR or supplement to an EIR were not present under the substantial evidence standard. (*Friends of Davis v. City of Davis* (2000) 83 Cal.App.4th 1004, 1018 [100 Cal.Rptr.2d 413]; see Guidelines, § 15162, subd. (a).)

 Petitioners characterize the city's finding that the TIMP and other measures to mitigate transportation impacts are infeasible due to the uncertainty of funding from sources other than the city as an amendment to the General Plan Framework. We reject that characterization. The city's finding did not amend the General Plan Framework. A public agency's findings with respect to a proposed project (Pub. Resources Code, § 21081; Guidelines, § 15091) relate to the project but are separate and distinct from the project itself. (See Pub. Resources Code, § 21065; Guidelines, § 15378.) To the extent the city's finding reflects changed circumstances surrounding the project, Petitioners have not shown that the changed circumstances compel the conclusion that the significant environmental effects will be different or more severe. The city's stated goal to implement the TIMP and other mitigation measures remains the same. The city's finding reflects a greater likelihood that the TIMP will be fully funded and implemented than the city believed at the time of the prior EIR approval, when the city stated that it could not meet its share of the TIMP's costs. Moreover, the EIR discussed the significant transportation impacts of the General Plan Framework without the proposed mitigation, and Petitioners have not challenged the adequacy of that analysis in the EIR. We therefore conclude that the city's finding that the mitigation measures are infeasible does not result in either new significant environmental effects or a substantial increase in the severity of significant effects identified in the EIR and does not otherwise trigger the need for a subsequent EIR or supplement to the EIR.

4. *The City's Adoption of a Statement of Overriding Considerations Was Proper*

A statement of overriding considerations is not a substitute for the findings required by Public Resources Code section 21081, subdivision (a).[4] (Guidelines, §§ 15091, subd. (f), 15093, subd. (c).) Rather, a statement of overriding considerations supplements those findings and supports an agency's determination to proceed with a project despite adverse environmental effects. (Guidelines, § 15093, subds. (a), (c).)

Challenging the city's statement of overriding considerations, Petitioners quote part of the Discussion by the Office of Planning and Research of Guidelines section 15093.[5] The Discussions are published by the Office of Planning and Research (<http://www.ceres.ca.gov/ceqa> [as of Nov. 10, 2004]) but are not part of the California Code of Regulations. The Discussion of Guidelines section 15093 explains that before adopting a statement of overriding considerations, an agency must show that it has considered the mitigation measures and project alternatives identified in the EIR that would lessen the significant environmental effects. We agree. The requirement that an agency must make findings concerning the implementation or feasibility of mitigation and alternatives to the project (Pub. Resources Code, § 21081, subd. (a); Guidelines, §§ 15091, subds. (a), (f), 15093, subd. (c)) means that the agency must consider the mitigation measures and project alternatives. (*Mountain Lion Foundation v. Fish & Game Com.,* *supra,* 16 Cal.4th at p. 134.) Contrary to Petitioners' argument, however, the Discussion does not suggest and there is no basis to conclude that before adopting a statement of overriding considerations an agency must consider additional mitigation measures and project alternatives apart from those identified in an adequate EIR.

---

[4] Public Resources Code section 21081 requires an agency to find with respect to each significant environmental effect that (1) mitigation measures required in or incorporated into the project will avoid or substantially lessen the significant effect; (2) those measures are within the jurisdiction of another public agency and have been adopted, or can and should be adopted, by that agency; or (3) specific economic, legal, social, technological, or other considerations make the mitigation measures or alternatives identified in the EIR infeasible. (Pub. Resources Code, § 21081, subd. (a); Guidelines, § 15091, subd. (a).)

[5] Petitioners rely on the following paragraph from the Discussion of Guidelines section 15093: "The court in *Citizens For Quality Growth v. Mount Shasta* (1988) 198 Cal.App.3d 433 [243 Cal.Rptr. 727], held that when an agency approves a project that will significantly affect the environment, CEQA places the burden on the approving agency to affirmatively show that it has considered the identified means (mitigation and/or alternatives) of lessening or avoiding the project's significant effects and to explain its decision allowing those adverse changes to occur. In other words, an agency may only get to overriding considerations after the agency has made the appropriate findings; then, and only then, may an agency go on to explain why a project may go forward notwithstanding its effects."

We therefore construe Petitioners' contention that the city failed to consider alternative measures to ensure that development and population growth will not overburden the city's transportation infrastructure as a challenge to the range of project alternatives and mitigation measures discussed in the EIR and to the city's findings in December 1996 and September 1999 that the EIR was adequate. The time for those challenges to the EIR expired long before Petitioners commenced this action in September 2001. (Pub. Resources Code, § 21167.) Moreover, we previously determined that the range of alternatives discussed in the EIR is reasonable (*Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th at p. 1265), and that determination is binding on Petitioners in this action under the doctrine of collateral estoppel. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341–342 [272 Cal.Rptr. 767, 795 P.2d 1223].)

### 5. *Res Judicata Bars Petitioners' Challenges to Some Findings*

The city's current findings concerning impacts on water resources, waste water, solid waste, open space, and utilities are substantially identical to its prior findings on those matters. Petitioners either did not challenge those findings in the prior litigation or, in the case of water resources, unsuccessfully challenged the finding. (*Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th at pp. 1262–1263.)

Res judicata or claim preclusion precludes the relitigation of a cause of action that previously was adjudicated in another proceeding between the same parties or parties in privity with them. (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].) Res judicata applies if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974 [104 Cal.Rptr. 42, 500 P.2d 1386].) Res judicata bars the litigation not only of issues that were actually litigated but also issues that could have been litigated. (*Id.* at p. 975.)

Two proceedings are on the same cause of action if they are based on the same "primary right." (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 904.) The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. (*Ibid.*) The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. (*Ibid.*)

An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose. Thus, the California Supreme Court in *Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at pages 906 to 907 held that a breach of contract gives rise to a single cause of action, all of the remedies for which must be sought in a single action, even if a particular item of damage has not yet been sustained. The court held that the plaintiff's primary right was the right to be free from all of the injuries arising from a particular breach of contract, and distinguished cases where separate and distinct contract covenants were breached at different times. (*Id.* at pp. 907–908.) The *Mycogen* court declined to adopt the transactional theory of res judicata of the Restatement Second of Judgments in lieu of California's primary rights theory, noting that the result in the case would be the same under either theory. (*Mycogen*, *supra*, at p. 909, fn. 13.)

Similarly, the California Supreme Court in *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co* (1993) 5 Cal.4th 854, 860–861 [21 Cal.Rptr.2d 691, 855 P.2d 1263] determined that the plaintiff suffered a single injury as a result of an attorney's negligence in connection with a particular debt collection, even though the injury allegedly resulted from two different omissions. The court noted that the two omissions resulted in nonpayment of the same debt and that they "arose from the same transaction." (*Ibid.*)

These authorities do not mean that injuries arising from the same set of facts can give rise to only one cause of action. The California Supreme Court has rejected the transactional theory of res judicata. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58], disapproved on another point in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4 [88 Cal.Rptr.2d 19, 981 P.2d 944].) Rather, these authorities indicate that in defining the injury suffered, primary rights theory incorporates to some degree a transactional standard. (See Heiser, *California's Unpredictable Res Judicata (Claim Preclusion) Doctrine* (1998) 35 San Diego L.Rev. 559, 569–570.)

The decision in the prior litigation between these identical parties is final because the time to appeal the judgment by the superior court on remand has expired. (*Castro v. Higaki* (1994) 31 Cal.App.4th 350, 356–357 [37 Cal.Rptr.2d 84]; see *Sullivan v. Delta Airlines, Inc.* (1996) 15 Cal.4th 288, 303, & fn. 7 [63 Cal.Rptr.2d 74, 935 P.2d 781].) The decision is on the merits because the judgment decided the merits of Petitioners' challenges under CEQA. The CEQA cause of action in the prior proceeding and the CEQA cause of action in the present proceeding are based on the city's alleged failure to comply with CEQA with respect to the same project, the same EIR, and substantially the same findings.

Petitioners contend the material facts have changed so res judicata should not apply. They cite documents and information that became available only after the city made its original CEQA findings in December 1996. We disagree. The city's findings were based primarily on the information and analysis contained in the EIR. We rejected Petitioners' challenges to the EIR in the prior appeal and stated that the city need not revise its EIR unless it substantially changed the project, which it did not do. (*Federation of Hillside & Canyon Associations v. City of Los Angeles, supra,* 83 Cal.App.4th at pp. 1261, fn. 7, 1266 & fn. 12.) We directed the superior court to order relief limited to vacating the city's approval of the General Plan Framework and its finding on transportation impacts. (*Id.* at pp. 1266–1267.) The city had no obligation to update the analysis of environmental impacts in its adequate EIR or to comprehensively revise its findings.

We therefore conclude that the material facts have not changed and that the two proceedings involve the same primary right and the same cause of action. The primary right in both proceedings is the right to ensure the city's compliance with CEQA's substantive and procedural requirements in connection with the General Plan Framework and the certified EIR. Petitioners could have challenged the city's findings on waste water, solid waste, open space, and utilities in the prior proceeding, but did not. Res judicata bars Petitioners' challenges to those findings. Having unsuccessfully challenged the finding on water resources in the prior proceeding, Petitioners also are barred from challenging that finding again in this proceeding.

Petitioners cite *Mata v. City of Los Angeles* (1993) 20 Cal.App.4th 141 [24 Cal.Rptr.2d 314] for the proposition that a judgment in a mandamus proceeding cannot have a res judicata effect because a mandamus proceeding is a special proceeding rather than an ordinary action. *Mata* held that a prior ruling by the superior court on the merits of a police officer's petition for writ of mandate seeking reinstatement did not preclude causes of action for civil rights violations under 42 United States Code section 1983. The petitioner alleged the petition for writ of mandate and section 1983 claims in the same pleading are based on the same set of facts. (*Mata, supra,* at p. 143–144.) The *Mata* court concluded that the prior ruling did not involve the same cause of action as the section 1983 causes of action. (*Mata, supra,* at p. 149.) Although the reasons for that conclusion are not entirely clear, the *Mata* court apparently concluded that the causes of action were different because the writ petition and section 1983 causes of action involved " 'separate and distinct torts.' "[6] (*Mata, supra,* at p. 149.) The court stated further, "In fact, the

---

[6] The *Mata* court apparently concluded that there were " 'separate and distinct torts' " and therefore separate causes of action because the petitioner/plaintiff relied on separate legal theories. (*Mata v. City of Los Angeles, supra,* 20 Cal.App.4th at p. 149.) The law is clear, however, that causes of action based on the same primary right are the same cause of action

mandamus proceeding is technically not regarded as an action at all. It is, instead, described as a special proceeding. [Citation.]" (*Ibid.*) We regard this statement as an attempt to explain why the causes of action were not the same, rather than a holding that res judicata was inapplicable because the prior ruling was in a special proceeding. *Mata* made no attempt to explain, and Petitioners do not explain, why a decision in a prior mandamus proceeding should not be res judicata if the requirements for the doctrine are satisfied.

We see no reason to distinguish between actions and special proceedings (see Code Civ. Proc., §§ 22, 23) for purposes of res judicata if the requirements of the doctrine are satisfied and if the issues asserted in the later proceeding could have been asserted in the prior proceeding. Application of res judicata in those circumstances serves the purposes of the doctrine, to prevent inconsistent rulings, promote judicial economy by preventing repetitive litigation, and protect against vexatious litigation. (*People v. Barragan* (2004) 32 Cal.4th 236, 254–255 [9 Cal.Rptr.3d 76, 83 P.3d 480]; *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) Code of Civil Procedure section 1908, a codification of the res judicata doctrine, states that "a judgment or final order in an action or special proceeding" is conclusive as to "the matter directly adjudged." (*Id.*, subd. (a) & (a)(2).) Moreover, the California Supreme Court has held that a judgment on the merits in a mandamus proceeding is res judicata and is conclusive on all issues that were raised or could have been raised in the proceeding. (*Hollywood Circle, Inc. v. Department of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 733 [13 Cal.Rptr. 104, 361 P.2d 712] ["It is settled that the doctrine of res judicata applies to judgments on the merits in proceedings in mandamus. [Citations.]"]; *Caminetti v. Board of Trustees* (1934) 1 Cal.2d 354, 356 [34 P.2d 1021] [held that a superior court judgment in a mandamus proceeding was "conclusive not only as to issues raised but also as to those which could have been raised"].) Although those two cases involved the issue preclusion aspect of res judicata, the Supreme Court in making those statements did not distinguish issue preclusion from claim preclusion, and we conclude that for these purposes no distinction is warranted.

### 6. *The Evidence Supports the City's Findings on Air Quality Impacts*

Petitioners contend the findings state that air quality impacts will be mitigated or avoided. Petitioners contend that finding conflicts with the finding that implementation of the TIMP is infeasible. The city's finding of TIMP infeasibility differs from its prior finding on that issue, so res judicata

even if they are based on different legal theories. (*Mycogen Corp. v. Monsanto Co.*, *supra*, 28 Cal.4th at p. 904.)

arguably does not preclude Petitioners' contention that the air quality findings conflict with the new TIMP infeasibility finding.

In fact, the findings state that air quality impacts will be significant and that full implementation of the TIMP would substantially lessen those impacts, but that unavoidable significant impacts will result if the TIMP is not fully implemented. Contrary to Petitioners' argument, the findings provide no false assurance that air quality impacts will be mitigated or avoided. Petitioners therefore have not shown that the air quality findings are not supported by the evidence.

### 7. *Petitioners Have Not Shown Error with Respect to Projections Based on Census Data*

Petitioners contend the city's reliance in the General Plan Framework and EIR on population and housing projections by the Southern California Association of Governments (SCAG) based on 1990 census data, and the city's reference to those figures in its findings, is improper because the projections were outdated when the city adopted its findings in 2001. Petitioners argue that the projections "are not based on substantial evidence. Actions based upon an EIR reflecting data that is over ten years old violate CEQA." Petitioners cite no authority for their argument. They do not explain what more current information was available to the city, how that information differed from the projections that the city relied on, or how the more current information might have affected the city's decision. Apart from our conclusion that res judicata bars Petitioners' challenge to findings that are substantially the same as the city's prior findings, discussed *ante*, we conclude that Petitioners waive their contention that there is no substantial evidence to support the city's findings in this regard because they fail to discuss the evidence on point (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1274 [90 Cal.Rptr.2d 41]) and do not adequately explain their appellate argument (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115–1116 [75 Cal.Rptr.2d 27]).

In any event, our review of Petitioners' comments to the city before project approval reveals the infirmity of Petitioners' argument.[7] Petitioners argued in

---

[7] Petitioners' judicial challenge to the city's decision is limited to the grounds presented to the city. Public Resources Code section 21177 codifies the exhaustion of administrative remedies doctrine under CEQA. (*Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227, 237–238 [73 Cal.Rptr.2d 388].) The statute prevents a petitioner from challenging a decision under CEQA on grounds that were not presented to the public agency during the public comment period or before the close of the public hearing, provided that the agency provided a public comment period or a public hearing concerning the

comments submitted to the city that SCAG's population projections issued in 2001 were lower than its 1990 projections and that in light of the lower projections there is no substantial evidence that mitigation of the significant impacts resulting from population and employment growth is infeasible. If mitigation is feasible, Petitioners argued, there is no basis for a statement of overriding considerations. Petitioners do not argue on appeal, however, that the evidence does not support the city's findings on the feasibility of mitigation or that the city failed to adopt feasible mitigation measures. Moreover, Petitioners do not explain how the adoption of a statement of overriding considerations where none was needed would deprive the decision makers or the public of information necessary to meaningfully evaluate the project or otherwise result in prejudice. Petitioners therefore have not shown prejudicial error. (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1236–1237 [32 Cal.Rptr.2d 19, 876 P.2d 505]; cf. *Association of Irritated Residents v. County of Madera* (2003) 107 Cal.App.4th 1383, 1391 [133 Cal.Rptr.2d 718].)

## *DISPOSITION*

The judgment is affirmed. The city is entitled to costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied December 3, 2004, and appellants' petition for review by the Supreme Court was denied February 16, 2005.

---

decision and gave the notice required by law. (Pub. Resources Code, § 21177, subds. (a), (e); *Santa Teresa Citizen Action Group v. City of San Jose* (2003) 114 Cal.App.4th 689, 701–702 [7 Cal.Rptr.3d 868].) As codified in CEQA, the exhaustion doctrine does not require that the petitioner personally presented the issue to the agency as long as somebody else did so and the petitioner timely objected to the project on another ground. (Pub. Resources Code, § 21177, subds. (a), (b); *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 894 [236 Cal.Rptr. 794].)