Filed 7/24/13  CACERF Norco v. City of Norco CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CACERF NORCO, LLC., | |
| Plaintiff and Appellant, | E055486 |
| v. | (Super.Ct.No. RIC10010637) |
| CITY OF NORCO et al., | O P I N I O N |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge.

Affirmed.

Cox, Castle & Nicholson, Kenneth B. Bley and Stanley W. Lamport for Plaintiff and Appellant.

Harper & Burns and John R. Harper for Defendants and Respondents.

### I.  INTRODUCTION

Plaintiff and appellant, CACERF Norco, LLC (CACERF), is the owner of approximately 428 acres in the City of Norco.  It filed the present writ petition and

1

declaratory relief/inverse condemnation action against defendants and respondents, City of Norco and the City Council of the City of Norco (collectively, the City), contending that changes in the City's general plan and zoning ordinances resulted in a taking of CACERF's property under the Fifth and Fourteenth Amendments. We disagree.

We affirm the trial court's denial of CACERF's petition for writ of mandate and the judgment entered on the declaratory relief/inverse condemnation action. We find that to the extent CACERF's petition is a "facial" challenge to the general plan designation and zoning ordinance, the regulations do not deprive CACERF of all economically beneficial or productive use of its land. To the extent CACERF's attack is an "as applied" challenge to the general plan designation and zoning ordinance, the claim is not ripe.

## II. FACTS

The property in question is approximately 428 acres in size. Immediately prior to the subject general plan amendment and zone change the property was designated general manufacturing and hillside. Under this land use, 378 acres could be used for manufacturing and the remaining acres could be used for agricultural and low density single-family homes.[1] The land use designation was a holdover from the County of Riverside prior to the City's incorporation. The property was originally developed in

---

[1] Uses allowed in the general manufacturing zone were manufacturing, research and development, and wholesale and distribution, as well as warehousing. Ancillary uses were allowed as long as they were incidental to the permitted uses. The hillside agricultural zone allowed one house for every 10 acres.

2

1958 by Wyle Laboratories for military and consumer product safety testing. As a result of this use, the property became contaminated. Following Wyle Laboratories's vacation of the premises, the State Department of Toxic Substances Control began supervising remediation of the site. As of late 2009, about one-half of the property had been cleaned. The property is, in essence, vacant with a few remaining Wyle Laboratories buildings. The site is surrounded on three sides by single-family residential development.

In 2002, following vacation of the property by Wyle Laboratories, the property was purchased by CRV SC Norco Partners for $18 million. CRV SC Norco Partners submitted to the City a specific plan and tentative tract map. During this process it was discovered that the land was contaminated; as a result, no immediate development was permitted. In late 2009, the property was obtained in foreclosure by CACERF for $9,422,707.[2]

About this time the City began a process to amend its general plan and zoning ordinances to create a new preservation and development zone. Under this land use designation, development would be allowed only after a specific plan had been prepared; allowed uses involved planned commercial development, planned recreational development, and planned resort development. This new land use designation was to

---

[2] EnviroFinance owns the property through CACERF. EnviroFinance was the initial lender on the project. At some point before the initial submittal by CRV SC Norco Partners, Lehman Brothers became the primary owner of the property. After the initial submission by CRV SC Norco Partners and the discovery that the property was contaminated, Lehman Brothers defaulted on the loan.

3

apply to two large parcels of property within the City. One was the CACERF parcel and the other was a piece of property 475 acres in size, near Lake Norconian.[3]

On the day the planning commission approved the general plan amendment and zoning changes, counsel for CACERF directed a letter to the planning commission requesting a 30-day continuance. By way of this letter, counsel for CACERF informed the commission that in CACERF's opinion, a residential land use designation for the property was the best use. Thereafter, first readings of the general plan amendment and zone changes were held before the City council. James Camp appeared at the hearing on behalf of CACERF. During his presentation, Camp asked the council to continue the matter because CACERF needed more time to study and understand the various land uses being proposed. He further stated that CACERF had no immediate plans to develop the property but that the manufacturing designation was not appropriate.[4] On January 20, 2010, the date scheduled for the second reading of the general plan amendment and zone changes, the council approved creation of the preservation and development zone. It further approved the zone change relative to the Norconian parcel. As to the CACERF parcel, the council, at the encouragement of CACERF, continued the second reading for

_____

[3] The Norconian site included the Norconian Hotel and Resort, the Naval Surface Warfare Center, Riverside Community College, and the California Rehabilitation Center.

[4] CACERF also directed a letter to the council informing it that CACERF did not object to removing the M-2 zoning from its land, but that a total preclusion of residential development from its land "makes infeasible and uneconomic the preferred primary uses of the property."

purposes of discussing with CACERF the City's acquisition of the parcel for open space and conservation.[5]

On April 21, the City council, by way of a consent calendar item, approved the zone change for the CACERF parcel. On the preceding day, CACERF had provided the City with 215 pages of reports prepared by consultants for CACERF; the reports communicated that the property could not be put to an "economically beneficial or productive use" under the new zoning.

On May 27, 2010, CACERF filed its petition for writ of mandate. Joined with the petition were causes of action for declaratory and injunctive relief and inverse condemnation. The trial court was provided with 735 pages of "Administrative Record." Following a hearing, the petition was denied. The parties thereafter, and without waiving their right to appeal, stipulated to the entry of judgment on the remaining causes of action.

### III. ANALYSIS

Both at the trial level and on appeal, CACERF's argument is somewhat confusing. By way of its petition, CACERF pleads that the City's rezoning "results in an unconstitutional taking of the Property because it deprives CACERF of all beneficial and productive use of the Property. The new zoning allows only planned commercial, recreational and resort projects and expressly prohibits residential development. Because none of the allowed uses are economically viable, the rezoning renders the Property

---

[5] At this hearing, Stanley Lamport appeared on behalf of CACERF.

worthless.  [¶]  . . .  [¶]  . . . The only economically viable use for the Property is residential development."  In its prayer, however, CACERF seeks only to have the court vacate and set aside its rezoning of the property.

The incongruity in CACERF's position is that a vacation by the City of its rezoning would have no effect on CACERF's inability to use the property for residential purposes, the only use CACERF argues would be appropriate.  Vacation of the new land use designation would have the effect of returning the property to a manufacturing designation, a use which CACERF is already on record before the City as opposing.

With this said, we address CACERF's arguments.

IV.  STANDARD OF REVIEW

"The adoption or amendment of a general plan is a legislative act.  (Gov. Code, § 65301.5.)  A legislative act is presumed valid, and a city need not make explicit findings to support its action.  [Citations.]  A court cannot inquire into the wisdom of a legislative act or review the merits of a local government's policy decisions."  (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2005) 126 Cal.App.4th 1180, 1195.)

Generally, review of a legislative act under Code of Civil Procedure section 1085 is limited to determining whether the agency's action was arbitrary, capricious, entirely without evidentiary support, or procedurally unfair.  (*Hernandez v. City of Encinitas* (1994) 28 Cal.App.4th 1048, 1059.)

6

Where the factual record is settled, and the challenge is to the constitutionality of the legislative action, we must engage in an independent review; this is so regardless of the procedural mechanism by which it reaches us. "Constitutional issues are always reviewed de novo. [Citation.] Here, the likelihood of prevailing on the merits *does* depend upon a question of law, because we are asked to conduct a facial review of the ordinance to determine whether it is constitutional." (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433.)

"The standard of judicial review with respect to economic regulation has been clearly established: '[L]egislation regulating . . . or otherwise restricting . . . property rights is within the police power if its operative provisions are reasonably related to the accomplishment of a legitimate governmental purpose.' [Citation.] This standard is consistent with the United States Supreme Court's . . . observation that '[w]here property interests are adversely affected by zoning, the courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property.' [Citation.]" (*Griffin Development Co. v. City of Oxnard* (1985) 39 Cal.3d 256, 264, fn. omitted; see *Agins v. City of Tiburon* (1980) 447 U.S. 255, 260.)

Here, CACERF does not argue that the general plan amendment and zoning ordinance are not rationally related to legitimate state concerns. Rather, its sole argument

7

is that the City's actions deprives it of all viable economic use of its property. We turn to this issue.

Allegations of an unconstitutional taking of property can be presented by way of a "facial" attack on the regulating ordinance or by an "as applied" challenge to the regulation. (*Keystone Bituminous Coal Assn. v. DeBenedictis* (1987) 480 U.S. 470, 494-496.)

"A facial challenge to the constitutional validity . . . considers only the text of the measure itself, not its application to the particular circumstances of an individual. . . . '"[P]etitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions."' [Citations.][6] [¶] An as applied challenge may seek (1) relief from a specific application of a facially valid . . . ordinance to an individual . . . who [is] under [an] allegedly impermissible present restraint . . . as a result of the manner or circumstances in which the . . . ordinance has been applied, or (2) an injunction against future application of the . . . ordinance in the allegedly impermissible manner . . . . It contemplates analysis of the facts of a particular case . . . to determine the circumstances in which the . . . ordinance has been applied and to consider whether in those particular circumstances the application deprived the

---

**6** As explained in *Hodel v. Virginia Surface Min. & Reclam. Assn.* (1981) 452 U.S. 264, 295: "Because appellees' taking claim arose in the context of a facial challenge, it presented no concrete controversy concerning either application of the Act to particular surface mining operations or its effect on specific parcels of land. Thus, the only issue properly before the District Court and, in turn, this Court, is whether the 'mere enactment' of the Surface Mining Act constitutes a taking."

8

individual to whom it was applied of a protected right." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084; *Avenida San Juan Partnership v. City of San Clemente* (2011) 201 Cal.App.4th 1256, 1277 ["An as applied challenge considers the application of that law to the particular circumstances of the case."].)

At both the trial level and on appeal, CACERF submits that its challenge to the general plan amendment and zoning ordinance is a facial attack. "The test to be applied in considering this facial challenge is fairly straightforward. A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land. . . .' [Citations.] [¶] Petitioners thus face an uphill battle in making a facial attack on the Act as a taking." (*Keystone Bituminous Coal Assn. v. DeBenedictis, supra,* 480 U.S. at p. 495.)

Here, it is clear that CACERF's facial challenge must fail. In looking at the text of both the general plan amendment and the implementing zoning ordinance, CACERF is not denied economically viable uses of its land. There is nothing on the face of the general plan amendment or ordinance which denies CACERF an economically beneficial or productive use of its land. (See *Penn Central Transp. Co. v. City of New York* (1978) 438 U.S. 104, 131 [land use regulations causing a diminution in value, standing alone, do not establish a "taking"].) Here, the preservation and development zone allows for planned mixed use commercial/office park projects, planned recreational projects, and planned resort projects. On its face, CACERF is not deprived of economically viable uses of its land. The fact that the uses may not be those that CACERF desires, or uses

from which it can maximize its investment, is beside the point. The general plan amendment and zone change simply do not facially result in a taking of CACERF's land under the Fifth Amendment.

CACERF's argument also fails, if construed as an "as applied" challenge. Its claim is simply not ripe in that it failed to avail itself of ordinary processes by which a final decision could be obtained as to the application of the relevant land uses to its property. As explained in *Agins*, before an as applied challenge lies, the property owner must submit to the local body a plan of development which is denied. (*Agins v. City of Tiburon, supra,* 447 U.S. at p. 260.) "[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." (*Williamson Co. Regional Planning v. Hamilton Bank* (1985) 473 U.S. 172, 186.) "A final decision by the responsible state agency informs the constitutional determination whether a regulation has deprived a landowner of 'all economically beneficial use' of the property, [citation], or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred, [citation]. These matters cannot be resolved in definitive terms until a court knows 'the extent of permitted development' on the land in question." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 618.) "Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends upon the landowner's first having followed reasonable and necessary

steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law.  As a general rule, until these ordinary processes have been followed the extent of the restriction on property is not known and a regulatory taking has not yet been established."  (*Id.* at pp. 620-621; *Williamson Co. Regional Planning v. Hamilton Bank, supra,* at p. 191, fn. omitted ["[U]ntil the [entity] determines that no variances will be granted, it is impossible . . . to find, on this record, whether [petitioner] 'will be unable to derive economic benefit' from the land."].)  And, as expressed in *MacDonald, Sommer & Frates v. Yolo County* (1986) 477 U.S. 340, 350:  "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other."

We begin by noting that CACERF's involvement in the City's development process was minimal at best.  It did not appear before the planning commission when it was considering the general plan amendment and zone change.  At the first reading of the amendment and zone change before the City council, a representative for CACERF requested a continuance so that CACERF could get up to speed with the process.  At the time set for the second reading, a representative appeared for purposes of encouraging the council to continue the agenda item so as to discuss the possibility of the City acquiring the property.  Three months thereafter, and on the day of the second reading, CACERF,

11

without appearing, submitted reports prepared by two separate consultants. Hardly can this be considered conduct intended to ripen one's claim.

While the doctrine of ripeness does not require futile acts by the property owner, it does require a sense of finality in terms of the uses which will be allowed on the property. (*Palazzolo v. Rhode Island, supra,* 533 U.S. at p. 622.) Here, that stage has not been reached. As indicated by the representative of CACERF at the December 2009 City council meeting: "We don't have any immediate plans for the property because we've only owned it a week and a half. . . . [¶] . . . [¶] . . . I'm not here to advocate any particular plan because we don't have a plan. . . ." To ripen its "as applied" claim, CACERF must not only have a plan, it must submit at least some plan which is acted upon by the entity. Otherwise, the courts are acting in a vacuum.

As indicated earlier: "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." (*MacDonald, Sommer & Frates v. Yolo County, supra,* 477 U.S. at p. 350.) Within the confines of the preservation and development general plan designation and zoning, there has been no demonstration that it is not workable. Our record contains reports from Robert Charles Lesser & Co., Real Estate Advisors, and PFK Consulting. They are relatively generic in nature, analyzing the demand for office and retail space in the general area and the unfeasibility of resort or hotel development. There is no discussion in the reports showing that CACERF has

12

attempted to work with the City in identifying the types of facilities that may be both appropriate and workable for the area.

For its claim to be ripe, CACERF must demonstrate that the City is irrevocably wedded to the preservation and development designation and that it indeed deprives CACERF of the economically beneficial or productive use of its land. CACERF has submitted nothing to the City for purposes of reaching a stage of finality.

Further, under Government Code section 65358, the general plan may be amended. CACERF has not sought such an amendment. There is not even a showing of the submission of a conceptual plan to the City for purposes of residential development. And while CACERF may think it futile, it clearly is not. As reflected in the October 28, 2009, planning commission minutes: "Member Newton asked what mechanisms are in place if in the future the City does see the need for residential. [Planning manager] King said any future property owner could come in for rezoning and that would be at the discretion of the [C]ity." Here, CACERF has not followed the reasonable and necessary steps to afford the City the opportunity to exercise its full discretion. As such, an "as applied" challenge does not lie.

13

## V.  DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>KING</u>

           J.

We concur:

<u>RAMIREZ</u>

     P. J.

<u>MILLER</u>

     J.