Margulies, J.
Appellants Nancy Atwell, Elizabeth Craven, and Matthew Weinstein appeal the denial of their petition for writ of mandate against the City of Rohnert Park (City). In 2010 and 2015, the city council approved and reapproved an expansion for an existing Wal-Mart store, which would include a full grocery component. Appellants contend the city council's second approval was inconsistent with its General Plan and land use policy LU-7. The trial court concluded appellants' petition was barred by res judicata because a prior petition challenging the city council's initial approval also asserted a claim contesting General Plan consistency. The trial court further held appellants' petition was barred by the statute of limitations and substantial evidence supported the city council's determination the expansion complied with the General Plan. We affirm the judgment.
I. BACKGROUND
A. The Initial Project and EIR
The City's General Plan includes land use policy LU-7 (hereafter Policy LU-7) which declares the City's obligation to: "Encourage new neighborhood commercial facilities and supermarkets to be located to maximize accessibility to all residential areas. [¶] The intent is to ensure that convenient shopping facilities such as supermarkets and drugstores are located close to where people live and facilitate access to these on foot or on bicycles. Also, because Rohnert Park's residential population can support only a limited number of supermarkets, this policy will encourage dispersion of supermarkets rather than their clustering in a few locations." (Italics omitted.)
In 2009, Wal-Mart Stores, Inc. (Wal-Mart) filed an application with the City, proposing to expand its existing store located in the northwest corner of town. The expansion would add approximately 36,000 square feet to the existing Wal-Mart "big box" discount store for the addition of a 24-hour grocery/supermarket (Project).
In 2010, the City prepared a draft environmental impact report (EIR). That EIR evaluated whether the Project was consistent with the General Plan. With regard to Policy LU-7, the draft EIR concluded the Project was "consistent." It stated: "The proposed project would expand the existing Walmart store to add space for food sales. There are no existing grocery stores within a 1-mile radius of the project site; therefore, the proposed project would be consistent with the commentary language concerning dispersal of grocery uses throughout the City. Furthermore, the proposed project would install bicycle storage facilities and enhance pedestrian facilities to improve accessibility for these *251 modes of transportation. Finally, the 24-hour operation of the expanded store would provide local residents with the opportunity to shop at times when existing stores are not open.... These characteristics are consistent with the objective of maximizing accessibility to supermarkets."
In response, the City received public comments asserting the Project was not consistent with the General Plan or Policy LU-7. These letters argued the Project would close existing neighborhood-serving grocery stores, is located in a large commercial area, and would contribute to an over-concentrated area around the U.S. Highway 101/Rohnert Park Expressway interchange.
The City addressed these comments in its final EIR. It concluded the concerns lacked merit and did not detract from the Project's consistency with Policy LU-7. Specifically, it noted the Project would be "well-positioned" to serve residents in northern Rohnert Park as well as residents in Cotati and southwest Santa Rosa. The City further noted drive times to the Project are shorter than or similar to the time needed to reach other existing supermarkets.
The planning commission subsequently considered the EIR. Following a public hearing, the planning commission declined to approve the original EIR or the Project. The planning commission instead concluded the EIR and Project did not comply with the General Plan and was, in part, inconsistent with Policy LU-7.
Wal-Mart subsequently appealed the planning commission's decision to not certify the EIR, arguing the EIR satisfied the requirements of the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq. ) and complied with Policy LU-7. Following a public hearing at which Policy LU-7 was discussed, the city council granted the appeal and specifically found "The Project would be consistent with all applicable General Plan goals and policies...." The resolution approving the site plan concluded: "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance."
B. The Sierra Club Action
Sierra Club and Sonoma County Conservation Action (SCCA) filed a petition for writ of mandate in Sonoma County Superior Court challenging the city council's EIR and Project approvals. (Sierra Club v. City of Rohnert Park (2012, No. SCV248112) (Sierra Club action).) Appellants were not named parties in that action. The petition asserted three causes of action for violating CEQA, the state Planning and Zoning Law ( Gov. Code, § 65000 et seq. ), and the Rohnert Park Municipal Code. The second cause of action for violations of the state Planning and Zoning Law alleged: "The Project is inconsistent and incompatible with applicable goals, policies and objectives of the Rohnert Park General Plan, including but not limited to ... Policy LU-7...." The Sierra Club action requested in part a peremptory writ of mandate commanding the City to set aside its EIR certification and Project approval.
Although raised in its petition, Sierra Club and SCCA did not pursue the claim that the Project conflicted with Policy LU-7. The trial court subsequently granted the petition and ordered the resolutions approving the Project be vacated and the Project be remanded for additional environmental review. Specifically, the court ordered "the EIR must address each and every traffic mitigation measure proposed for the Project and reanalyze the cumulative noise impacts...."
*252 C. Revised EIR and Subsequent Administrative Appeals
The City vacated the Project approvals and prepared a revised EIR. However, the revised EIR did not alter the original EIR's analysis of the Project's consistency with the General Plan.
In 2014, the planning commission held a public hearing on the revised EIR. Appellants objected to the Project during this hearing, alleging the Project "is in a section of town that has very few residents in it, and ... that's clearly at odds with the LU-7 plan. The original economic plan says that it would draw customers from a wide area." In response, the City asserted the Project "is consistent with City of Rohnert Park's General Plan. [¶] Even now, one and two neighborhoods coming on line in the west side of Rohnert Park are neighborhoods that will need grocery stores and services. There are other businesses operating at an expanded time frame, where those workers do need grocery stores and services." The City also took the position that the issue of urban decay was not part of what the court found inadequate about the EIR and thus is not before the planning commission. The planning commission subsequently certified the revised EIR and reapproved the Project.
Appellants then appealed the planning commission's decision. At the public hearing on the appeal, appellants again objected to the Project and challenged its consistency with the General Plan. Wal-Mart opposed the appeal and argued the Project complied with Policy LU-7 for three principal reasons: (1) the Project is located where there are no competing supermarkets within a mile, thereby meeting the goal of dispersing supermarkets; (2) the supercenter will be open 24 hours a day, helping augment options for local customers; and (3) the City, in the intervening years, has approved residential construction in the vicinity of Project. The City staff report also opined the Project was consistent with Policy LU-7, noting: "If anything, the Project is more consistent with the objectives of Policy LU-7 today than it was when it was considered in 2010 because of increased residential development in the vicinity of the Project." The city council denied the appeal and concluded the Project would comply with the City's General Plan and zoning ordinance.
D. Trial Court Proceedings
In 2015, appellants filed a petition in the superior court challenging the Project's consistency with Policy LU-7 and seeking a writ of mandate ordering the City to vacate the Project approvals. After merits briefing was completed, the City filed a motion for judgment on the pleadings asserting appellants' claims were barred by the doctrine of res judicata.
The trial court issued a tentative order denying the petition and granting the City's motion for judgment on the pleadings. The tentative order concluded the petition was barred by res judicata and the statute of limitations. The order further concluded substantial evidence supported the city council's determination of General Plan consistency. Appellants did not contest the tentative order, and judgment was entered in favor of the City. Appellants timely appealed.
II. DISCUSSION
A. Motion for Judgment on the Pleadings
" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.'
*253 [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law....' " ( People ex rel. Harris v. Pac Anchor Transportation, Inc . (2014) 59 Cal.4th 772, 777, 174 Cal.Rptr.3d 626, 329 P.3d 180.)
In granting the City's motion for judgment on the pleadings, the trial court concluded appellants' petition was barred by res judicata and the statute of limitations. For the reasons we explain below, we conclude res judicata bars appellants' petition. Accordingly, we need not address whether it also is barred by the statute of limitations.
1. Res Judicata
"The doctrine of res judicata bars a party and persons in privity with that party from relitigating a claim following a final judgment on the merits of the claim. ' " 'The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceedings.' " ' " ( Roberson v. City of Rialto (2014) 226 Cal.App.4th 1499, 1510, 173 Cal.Rptr.3d 66 ( Roberson ).) Res judicata not only bars issues actually litigated but also bars issues that could have been litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding. ( Federation of Hillside & Canyon Assns. v. City of Los Angeles (2004) 126 Cal.App.4th 1180, 1202, 24 Cal.Rptr.3d 543 ( Federation of Hillside ).)
The City claims appellants' petition is barred by res judicata because consistency with the General Plan was challenged in the Sierra Club action, the Sierra Club action resulted in a final judgment, and appellants are in privity with Sierra Club and SCCA. While appellants agree the Sierra Club action resulted in a final judgment, they contend this petition raises distinct claims and they are not in privity with Sierra Club and SCCA.
a. Identical Cause of Action
The second claim in the Sierra Club action alleged violations of the state Planning and Zoning Law. It asserted the Project "is inconsistent and incompatible with applicable goals, policies and objectives of the Rohnert Park General Plan," including Policy LU-7. Similarly, appellants' petition contends the Project violates the state Planning and Zoning Law because it conflicts with the Rohnert Park General Plan. The petition alleges "the Project directly contravenes Policy LU-7" and, due to such inconsistency, "the City acted in an arbitrary and capricious manner and committed a prejudicial abuse of discretion in approving the Project...." The petition also seeks a declaration of rights under the terms of the General Plan. Accordingly, the two petitions appear to raise the same issue regarding the Project's compliance with the City's General Plan.
Appellants assert their petition raises a distinct issue because the question of whether the Project is consistent with the General Plan was not actually litigated in the Sierra Club action. But as noted above, res judicata may bar issues that "could have been litigated." ( Federation of Hillside , supra , 126 Cal.App.4th at p. 1202, 24 Cal.Rptr.3d 543, italics added.) Appellants, however, contend their petition could not have been litigated in the Sierra Club action because it is based on the city council's 2015 resolutions, which were approved *254 following the Sierra Club action and contain new findings of General Plan consistency.
Whether appellants' challenge to the city council's 2015 resolutions and the prior challenge to the city council's 2010 resolutions constitute the same cause of action turns on whether "they are based on the same 'primary right.' " ( Federation of Hillside , supra , 126 Cal.App.4th at p. 1202, 24 Cal.Rptr.3d 543.) That is, "[t]he plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based." ( Ibid . ) " '[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.' " ( Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 160, 17 Cal.Rptr.2d 639.)
In arguing the city council's 2015 resolutions constitute a new wrong, appellants rely on Planning & Conservation League v. Castaic Lake Water Agency (2010) 180 Cal.App.4th 210, 103 Cal.Rptr.3d 124 ( Castaic Lake ). In that case, a nonprofit organization challenged an EIR concerning a water transfer. ( Id. at p. 219, 103 Cal.Rptr.3d 124.) The appellate court directed the issuance of a writ vacating the certification of the EIR as legally inadequate. ( Id. at p. 221, 103 Cal.Rptr.3d 124.) After a second EIR was certified in 2004, another petition was filed challenging the revised EIR. ( Id . at pp. 218-219, 224, 103 Cal.Rptr.3d 124.) The court concluded the subsequent petition involved a different cause of action because the second EIR was a "factually distinct attempt[ ] to satisfy CEQA's mandates." ( Id. at p. 228, 103 Cal.Rptr.3d 124.) Specifically, the court concluded the initial action "and the underlying actions involve distinct episodes of purported noncompliance regarding 'the same general subject matter' [citation], namely, the public's statutory right to an adequate EIR concerning the [water] transfer [citations]." ( Ibid. )
While Castaic Lake concluded the second petition could proceed due to " 'changed conditions and new facts which were not in existence at the time the action was filed' " ( Castaic Lake , supra , 180 Cal.App.4th at p. 227, 103 Cal.Rptr.3d 124 ), other courts have found subsequent petitions barred because they arise from materially similar facts. For example, in Ballona Wetlands Land Trust v. City of Los Angeles (2011) 201 Cal.App.4th 455, 134 Cal.Rptr.3d 194 ( Ballona Wetlands ), objectors filed petitions for writs of mandate challenging Los Angeles's certification of an EIR and project approvals for a certain real estate development. ( Id. at p. 462, 134 Cal.Rptr.3d 194.) After the trial court granted the petitions in part, Los Angeles vacated its certification of the EIR and project approvals. ( Id. at p. 463, 134 Cal.Rptr.3d 194.) Los Angeles then revised certain sections of the EIR, recertified it, and reapproved the project. ( Id. at p. 464, 134 Cal.Rptr.3d 194.) The objectors again challenged the EIR based both on the revisions and on new grounds. ( Ibid. ) The court concluded the objectors were barred from raising new challenges to the revised EIR: "After considering the petitioner's challenges to an EIR or other agency action and rendering a final judgment and peremptory writ of mandate, a trial court evaluating a return to the writ may not consider any newly asserted challenges arising from the same material facts in existence at the time of the judgment. To do so would undermine the finality of the judgment." ( Id. at p. 480, 134 Cal.Rptr.3d 194.)
*255 Similarly, in Federation of Hillside , supra , 126 Cal.App.4th 1180, 24 Cal.Rptr.3d 543, Los Angeles prepared a general plan framework and EIR, which cited and relied in large part on a transportation improvement mitigation plan. ( Id. at p. 1190, 24 Cal.Rptr.3d 543.) Following an initial petition challenging the general plan framework and EIR, Los Angeles amended the EIR to add responses to comments on the transportation improvement mitigation plan, made new findings regarding mitigation measures, adopted a statement of overriding considerations, and readopted the general plan framework. ( Id. at pp. 1191-1192, 24 Cal.Rptr.3d 543.) A second petition was filed challenging the adoption of the general plan framework, CEQA findings, and statement of overriding considerations. ( Federation of Hillside , at p. 1193, 24 Cal.Rptr.3d 543.) On appeal, the court noted certain current findings by Los Angeles were substantially identical to its prior findings. ( Id. at p. 1202, 24 Cal.Rptr.3d 543.) Despite Los Angeles's reliance on information that postdated its initial CEQA findings, the court found "the material facts have not changed and ... the two proceedings involve the same primary right and the same cause of action" because the reapproval of the general plan framework was primarily based on information and analysis contained in the original EIR. ( Federation of Hillside , at p. 1204, 24 Cal.Rptr.3d 543.)
We do not find these cases inconsistent. Both Castaic Lake and Ballona Wetlands cite Federation of Hillside . And neither disputes the holding in Federation of Hillside -namely, that res judicata barred the petitioners' challenges in the second proceeding because, in part, "the material facts had not changed and the issues asserted in the later proceeding could have been asserted in the prior proceeding." ( Ballona Wetlands , supra , 201 Cal.App.4th at p. 480, 134 Cal.Rptr.3d 194 ; see Castaic Lake , supra , 180 Cal.App.4th at p. 229, 103 Cal.Rptr.3d 124 [distinguishing Federation of Hillside on the basis that it "challenged the same EIR and the material facts had not changed"].) Ballona Wetlands likewise concluded the materials facts had not changed such that res judicata was appropriate. ( Id. at p. 480, 134 Cal.Rptr.3d 194.) Castaic Lake , however, found material facts had changed and allowed the second petition to proceed. ( Id. at p. 228, 103 Cal.Rptr.3d 124.)
Accordingly, the key question is whether the city council's 2015 resolutions adopted new findings such that they constituted a new injury to appellants and a new wrong by the City. The city council's 2010 resolutions found, in relevant part, "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance." Likewise, the 2015 resolutions found, in relevant part, "The Project, as proposed and with recommended conditions and mitigation measures, will be consistent with the General Plan and Zoning Ordinance." There is no dispute the Project proposal remains unchanged. And both the 2010 and 2015 resolutions found the Project "will be consistent with the General Plan and Zoning Ordinance." Accordingly, the city council's 2015 resolutions raised a new issue only if the "recommended conditions and mitigation measures" included new or revised conditions or measures that are at issue in appellants' petition.
In the Sierra Club action, the trial court reversed the EIR because it was deficient in that it (1) failed to address certain proposed mitigation measures in connection with traffic impacts; and (2) failed to support its cumulative noise impact analysis with substantial evidence, consider mitigation measures, or adopt a statement of overriding consideration. The revised EIR
*256 addresses these two issues through revisions to (1) the executive summary matrix row regarding noise; (2) the section on noise, including thresholds of significance, project impacts, and mitigation measures; (3) the section on transportation; (4) the section on cumulative effects of noise; and (5) revisions to the cumulative noise analysis appendix. The revised EIR also added two new appendices on transportation demand management and store information (operations, policies, transportation demand management measures). No other revisions were made. The revised EIR does not mention Policy LU-7, and appellants' petition does not challenge the traffic or noise analyses. Rather, the petition focuses on the Project's location as incompatible with the goal of maximizing accessibility to residential areas. Consequently, even though the city council's 2015 resolutions are "new" and revisions were made to the EIR and its discussion of mitigation measures, these revisions are unrelated to Policy LU-7.
Moreover, all of appellants' arguments regarding Policy LU-7 are identical to those raised and argued before the city council in 2010. Concerns regarding the Project's compliance with the General Plan and Policy LU-7 were raised, discussed, and evaluated in connection with the original EIR and Project approval. Nothing in the record suggests appellants' current petition materially differs from the General Plan consistency claim raised in the Sierra Club action or the issues raised in public hearings on the original EIR and Project approvals. Accordingly, appellants' petition is not based on changed material facts and raises the same claims as raised in the Sierra Club action.
b. Privity
Appellants next argue no privity exists between them, Sierra Club and SCCA because they (1) were not parties to the Sierra Club litigation, (2) are unaffiliated with the Sierra Club or SCCA, (3) did not coordinate with Sierra Club or SCCA on the prior litigation, and (4) seek redress for both public and private harms. In response, the City contends appellants are in privity with Sierra Club and SCCA because both petitions seek to bring claims on behalf of the public against a public entity.
" ' "The concept of privity ... refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights....' " ' " ( Roberson , supra , 226 Cal.App.4th at p. 1511, 173 Cal.Rptr.3d 66, italics omitted.) "Over time, courts have embraced a somewhat broader, more practical concept of privity. ' "[T]o maintain the stability of judgments, insure expeditious trials," prevent vexatious litigation, and "to serve the ends of justice," courts are expanding the concept of privity beyond the classical definition to relationships " 'sufficiently close to afford application of the principle of preclusion.' " ' [Citation.] For example, more recently our Supreme Court explained the basic tenets of privity in broader terms: 'As applied to questions of preclusion, privity requires the sharing of "an identity or community of interest," with "adequate representation" of that interest in the first suit, and circumstances such that the nonparty "should reasonably have expected to be bound" by the first suit. [Citation.] A nonparty alleged to be in privity must have an interest so similar to the party's interest that the party acted as the nonparty's " ' "virtual representative" ' " in the first action.' " ( Castillo v. Glenair, Inc . (2018) 23 Cal.App.5th 262, 276-277, 232 Cal.Rptr.3d 844.) "Put another way, privity, ' "as used in the context of res judicata *257 or collateral estoppel, does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the litigation." ' " ( Id. at p. 277, 232 Cal.Rptr.3d 844, italics omitted.)
Here, both appellants' petition and the prior petition allege claims as, and on behalf of, citizens, taxpayers, property owners, and electors of Rohnert Park. While appellants argue their petition sets forth a private harm " 'because they will be directly and substantially affected by the adverse community impacts that may result from the Project,' " appellants fail to distinguish this harm from that alleged in the Sierra Club action. Nor do we see any meaningful distinction.
A similar argument was asserted and rejected in Roberson , supra , 226 Cal.App.4th 1499, 173 Cal.Rptr.3d 66. In that matter, the City of Rialto approved construction of a large commercial retail center. ( Id . at p. 1502, 173 Cal.Rptr.3d 66.) Rialto Citizens for Responsible Growth (Rialto Citizens) petitioned to invalidate the project approvals based in part on a defect in the city council hearing notice. ( Id . at p. 1505, 173 Cal.Rptr.3d 66.) The trial court invalidated the approvals, which was then reversed on appeal. ( Id . at p. 1506, 173 Cal.Rptr.3d 66.) Roberson subsequently filed a writ petition contesting the defect in the city council hearing notice. ( Id . at p. 1504, 173 Cal.Rptr.3d 66.) Roberson argued he was not in privity with Rialto Citizens because "he brought his petition 'in his own interest,' while Rialto Citizens challenged the project approvals on public interest grounds." ( Id . at p. 1512, 173 Cal.Rptr.3d 66.) However, Roberson's petition focused on "harm [to] the community" rather than harm to himself. ( Id . at pp. 1512-1513, 173 Cal.Rptr.3d 66.) Accordingly, the court concluded "Roberson ' " ' "had an identity or community of interest with, and adequate representation by" ' " ' Rialto Citizens on his defective notice claim, both during the July 2008 city council hearings and in the Rialto Citizens action." ( Id . at p. 1513, 173 Cal.Rptr.3d 66.) Accordingly, when an alleged harm impacts the public rather than a specific entity, the privity analysis must focus on the "community of interest" rather than the relationship between the parties. To this end, we find Association of Irritated Residents v. Department of Conservation (2017) 11 Cal.App.5th 1202, 218 Cal.Rptr.3d 517 ( Assn. of Irritated Residents ), the case relied upon by appellants, distinguishable. While that case applied a more rigid interpretation of privity, it relied upon cases involving specific harm to an entity, not a public harm.[1] ( Id . at p. 1232, 218 Cal.Rptr.3d 517, citing Rodgers v. Sargent Controls & Aerospace (2006) 136 Cal.App.4th 82, 86, 38 Cal.Rptr.3d 528 [action for personal injuries caused by asbestos exposure] & Lucido v. Superior Court (1990) 51 Cal.3d 335, 339, 272 Cal.Rptr. 767, 795 P.2d 1223 [prosecution for indecent exposure].)
This case raises issues of harm to the community-namely, the detrimental impact to neighborhood supermarkets caused by having one located in a large commercial area. Despite their claims of personal harm, appellants do not allege any such harm apart from that incurred by the community. Likewise, Sierra Club and SCCA brought their petition on behalf of its members who are part of the community.
*258 Within this framework, appellants' and Sierra Club's and SCCA's " ' "relationship to the subject matter of the litigation" ' " is identical. ( Castillo v. Glenair, Inc ., supra , 23 Cal.App.5th at p. 277, 232 Cal.Rptr.3d 844, italics omitted.)
Nor have appellants asserted their interest was not adequately represented in the Sierra Club litigation. (See, e.g., Assn. of Irritated Residents , supra , 11 Cal.App.5th at p. 1233, 218 Cal.Rptr.3d 517 [presumed common interests "effectively abdicated by lack of vigor in representation" because Sierra Club failed to timely appeal]; Castaic Lake , supra , 180 Cal.App.4th at p. 231, 103 Cal.Rptr.3d 124 [statement that environmental entity lacked funds to challenge the EIR "display[ed] an 'abdication of the role of public agent' [citation] and an abandonment of 'its intention to represent the interests of the general public' "].) Barring such evidence, we must assume Sierra Club and SCCA diligently litigated their petition and made an informed decision not to pursue the General Plan consistency argument. ( City of Santa Maria v. Adam (2012) 211 Cal.App.4th 266, 286, 149 Cal.Rptr.3d 491 ["The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance."].) Accordingly, we find appellants in privity with the petitioners in the Sierra Club action.
2. Public Policy Exception
Finally, appellants argue this court should consider their challenge because it raises a question of law regarding statutory interpretation. Even if the elements of res judicata are met, the California Supreme Court has held " 'when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed.' " ( City of Sacramento v. State of California (1990) 50 Cal.3d 51, 64, 266 Cal.Rptr. 139, 785 P.2d 522.) But in this instance, appellants are not asserting a question of law regarding statutory interpretation. Rather, they seek interpretation of an ordinance as it applies to the Project approval. Such a claim inherently requires the court to consider the facts and circumstances surrounding the Project. (See Citizens for Open Government v. City of Lodi (2012) 205 Cal.App.4th 296, 327, 140 Cal.Rptr.3d 459.)
Accordingly, appellants' petition is barred by res judicata. Even assuming appellants' petition is not barred by res judicata, we cannot conclude no reasonable person could have found the Project consistent with the General Plan and Policy LU-7.[2]
*259 B. Project Consistency with Policy LU-7**
III. DISPOSITION
The judgment is affirmed. Defendant City of Rohnert Park may recover its costs on appeal. ( Cal. Rules of Court, rule 8.278(a)(1), (2), (5).)
We concur:
Humes, P.J.
Banke, J.

In addition, the petitioners in Assn. of Irritated Residents submitted declarations indicating they were unaware of the prior action and had no reasonable expectation of being bound to that action, and Sierra Club failed to appeal the judgment due to a " 'clerical error.' " (Assn. of Irritated Residents, supra , 11 Cal.App.5th at pp. 1232-1233, 218 Cal.Rptr.3d 517.) The record does not suggest such evidence exists in this matter.

The parties also dispute whether appellants' petition is barred by the 90-day statute of limitations in Government Code section 65009. In arguing the 90-day limitations period bars appellants' petition, the City relies on Honig v. San Francisco Planning Dept. (2005) 127 Cal.App.4th 520, 25 Cal.Rptr.3d 649, Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist. (2012) 206 Cal.App.4th 1036, 142 Cal.Rptr.3d 276, and City of Chula Vista v. County of San Diego (1994) 23 Cal.App.4th 1713, 29 Cal.Rptr.2d 89. However, none of these cases are analogous because they involve initial approvals upon which later actions were based. (See Honig , at p. 528, 25 Cal.Rptr.3d 649 [obtained variance and then obtained building permit consistent with that variance]; Van de Kamps , at pp. 1047-1048, 142 Cal.Rptr.3d 276 [resolution approving project triggered statute of limitations rather than date lease was executed]; Chula Vista , at pp. 1720-1721, 29 Cal.Rptr.2d 89 [same].) Here, however, the initial city council approvals were vacated by this court and the City was required to reapprove the EIR and Project. Accordingly, we question whether those initial approvals could be considered a "final adjudicatory administrative decision." (County of Sonoma v. Superior Court (2010) 190 Cal.App.4th 1312, 1327, 118 Cal.Rptr.3d 915, italics omitted.) However, we need not resolve this dispute in light of our other holdings herein.

See footnote *, ante .