Filed 7/19/23; Certified for Publication 8/9/23 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| MARGARET McCANN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CITY OF SAN DIEGO et al.,<br><br>    Defendants and Appellants. | D081185<br><br><br><br>(Super. Ct. No. 37-2019-00011813-CU-TT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Reversed and remanded with directions.

Law Office of Todd T. Cardiff, Todd T. Cardiff for Plaintiff and Respondent.

Mara W. Elliot, City Attorney, M. Travis Phelps, Assistant City Attorney, and Jana Mickova Will, Deputy City Attorney for Defendants and Appellants.

## INTRODUCTION

This is the second appeal arising from Margaret McCann's dispute with the City of San Diego (City) over the City's environmental review process of a project to convert overhead utility wires to an underground system in several neighborhoods. (See *McCann v. City of San Diego et.al.* (2021) 70 Cal.App.5th 51 (*McCann I*).) In the first appeal, McCann alleged the City violated the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[1] by failing to properly consider the environmental impact of two undergrounding projects. (*McCann I, supra,* at p. 51.) We concluded the City's environmental review process was incomplete as to one set of projects that were approved through a mitigated negative declaration (MND Projects), because the City failed to analyze whether they were consistent with the City's Climate Action Plan. (*Id.* at pp. 91-97.) We reversed the judgment as to the MND Projects and directed the trial court to issue a peremptory writ of mandate ordering the City to set aside three resolutions that approved the projects. (*Id.* at p. 99.)

---

[1] Further unspecified section references are to the Public Resources Code.

On remand, the trial court issued a peremptory writ of mandate ordering the City to set aside the resolutions that approved the MND Projects. The trial court also ordered that it would retain jurisdiction over the matter until it determined the City complied with the relevant provisions of CEQA. The City rescinded the project approvals as directed by the trial court and asked the court to discharge the writ. McCann objected to the City's return and argued that the trial court should not discharge the writ because the City did not perform the relevant environmental analysis or affirmatively indicate that it abandoned the projects. The trial court sustained McCann's objection and declined to discharge the writ.

The City appeals the trial court's post-judgment order declining to discharge the writ. The City argues it has fully complied with the directives of the writ, as well as the remedial provisions of CEQA, and therefore the trial court has exceeded its jurisdiction by failing to discharge the writ. As we discuss, we conclude the City has fully satisfied the writ and therefore the writ must be discharged.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *McCann I*

The factual details of this case are fully set forth in our prior opinion in *McCann I* and we need not fully recount them here; we limit our discussion of those facts necessary to reach the appropriate disposition in the instant case. It suffices to say that the dispute in this case is related to the City's "decades-long effort to convert its overhead utility systems, suspended on wooden poles, to an underground system." (*McCann I, supra,* 70 Cal.App.5th at p. 66.) McCann, a resident of a neighborhood within the undergrounding project, challenged, inter alia, the need for the underground system to be supplemented with above-ground transformers housed in three-foot-tall

3

metal boxes in the public right-of-way.  (*Id.* at p. 65.)  On appeal, she argued that the City failed to complete the requisite environmental review process delineated in CEQA for two sets of projects within the City's broader undergrounding plan.  (*Ibid.*)

As to the first set of projects, McCann argued the City erred when it determined the projects were exempt from CEQA.  (*McCann I, supra,* 70 Cal.App.5th at pp. 65-66.)  We concluded McCann's claims were barred because she failed to exhaust her administrative remedies set forth in the San Diego Municipal Code requiring her to file an administrative appeal of the exemption determination.  (*Id.* at p. 76.)

The second set of projects—the MND Projects at issue in this case— were approved by the City through the use of a mitigated negative declaration.  (*McCann I, supra,* 70 Cal.App.5th at p. 71.)  McCann argued that the City violated CEQA by:  (1) impermissibly segmenting the citywide undergrounding project into smaller projects; (2) not defining the location of each transformer box before considering the environmental impact of the plan; (3) failing to consider the significant impact on aesthetics caused by the projects; and (4) determining that the projects would not have a significant environmental impact due to the greenhouse (GHG) emissions.  (*Id.* at p. 66.) We rejected each of McCann's assertions, except for her claim that substantial evidence did not support the City's finding that the projects would not have a significant environmental impact due to GHG emissions. (*Id.* at pp. 84-91.)  We concluded that because the City did not analyze whether the projects were consistent with the GHG reduction measures included in the City's Climate Action Plan, substantial evidence did not support the City's finding that the projects would not have a significant environmental impact.  (*Id.* at p. 91.)

4

Accordingly, in *McCann I,* we reversed the trial court's judgment as to the MND Projects and affirmed the judgment in all other respects. (*McCann I, supra,* 70 Cal.App.5th at pp. 98-99.) Our disposition directed the trial court to "enter a new judgment granting the petition as to the second cause of action challenging the MND Projects and to issue a peremptory writ of mandate directing the City to set aside its March 5 and March 7, 2019, resolutions adopting the mitigated negative declaration, the mitigation monitoring and reporting program, and establishing the relevant utility undergrounding districts." (*Id.* at p. 98.)

## B.    Proceedings on Remand

On March 25, 2022, the trial court issued a peremptory writ of mandate ordering the City to set aside the March 5 and March 7, 2019, resolutions. The trial court further ordered the City to suspend all activity related to the projects that may result in any change to the physical environment until the City reconsidered the rescinded resolutions and brought them into compliance with the requirements of CEQA. The court explained that the writ did not purport to direct the City to exercise its lawful discretion in any particular way, and that the court would retain jurisdiction over the matter by way of a return, pursuant to section 21168.9, subdivision (b), until the court determined the City complied with CEQA.

On June 15, 2022, the City filed a return to the peremptory writ of mandate. Resolution No. 314160—a resolution passed by the San Diego City Council on June 14, 2022—was included as an exhibit to the City's return. The resolution rescinded the March 2019 resolutions that established and approved the MND Projects. Specifically, Resolution No. 314160 declared, "the Council rescinds the certification of the Mitigated Negative Declaration approved by the Council through [the March 5, 2019, resolution]; rescinds

5

establishing UU602 Sampson Street, UU61 Redwood Street, UU616 Hilltop Drive PH II, and UU628 Fairmount Avenue Underground Utility Districts, approved by the Council through [the March 7, 2019, resolution]; and rescinds establishing UU908 Block 3DD, UU789 Block 4Y1, UU875 Block 6H1, and UU668 Block 8R1 Underground Utility Districts, approved by the Council through [the March 7, 2019, resolution]."

In their return, the City asked the trial court to discharge the writ and vacate an order to show cause related to contempt proceedings that are not relevant to the issues raised in this appeal. McCann filed an objection to the City's return and argued that the writ should not be discharged until the City proved it complied with CEQA by preparing a legally sufficient environmental analysis of the GHG emissions of the MND Projects. The City filed a response to McCann's objection and argued that they had fully complied with the terms of the writ by rescinding the project approvals.

The trial court issued a tentative ruling sustaining McCann's objection and heard argument from the parties the following day. The City argued that the disputed MND Projects had been completely rescinded and therefore the trial court exceeded its jurisdiction by failing to discharge the writ. The City expressly told the court "the projects have been rescinded. So there is no project and that's not in dispute."

The trial court sustained McCann's objection and confirmed its tentative ruling. In rendering its ruling, the court recognized that case law would seemingly allow McCann to simply file a supplemental or new petition to challenge the City's future compliance with CEQA as it relates to the undergrounding projects. Nevertheless, the trial court concluded, "based on this particular writ and the status of this particular case and the verbiage of this particular return, the court sustains [McCann's] objection and declines to

6

discharge the writ at this time.  The state of affairs will persist until the City files a supplemental return which allows the court to conclude the City has complied with the provisions of CEQA."  The City timely appealed the trial court's post-judgment order denying its request to discharge the writ.

## II.    DISCUSSION

The City argues it complied with the directives of the trial court's peremptory writ of mandate, as well as the remedial provisions set forth in section 21168.9, subdivision (a)(1), by rescinding the MND Projects approvals.  Thus, the City contends that the trial court exceeded its jurisdiction by declining to discharge the writ after the writ was fully satisfied.  McCann agrees that the writ may be discharged "[i]f the City no longer intends to move forward with the project" because CEQA does not apply to projects that have been rejected or denied.  However, she contends the evidence demonstrates the City "intends to re-analyze the GHG emissions and re-circulate the MND" rather than abandon the disputed projects.  Because the City has provided no evidence that they have conducted the requisite GHG analysis, McCann argues section 21168.9, subdivision (b), "imposes a mandatory duty on the trial court to exercise continuing jurisdiction over the City's proceedings" until the requirements of CEQA have

been met.[2]  As we discuss, we conclude the City has fully satisfied the writ and therefore the writ must be discharged.

## A.    General Legal Principles

"CEQA was enacted to advance four related purposes: to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, environmental damage; (3) prevent environmental damage by requiring project changes via alternatives or mitigation measures when feasible; and (4) disclose to the public the rationale for governmental approval of a project that may significantly impact the environment." (*California Building Industry Assn. v. Bay Area Air Quality Management Dist.* (2015) 62 Cal.4th 369, 382.)  When a governmental agency, such as the City, has violated CEQA, "[t]he mechanism through which the remedy or remedies are implemented [to correct the CEQA violation] is a peremptory writ of mandate." (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 756.)  Section 21168.9 governs the issuance of such a writ and provides for three types of mandates that may issue.  (§ 21168.9, subd. (a).)  The governmental agency may be directed "(1) to void, in whole or in part, a determination, finding or decision, (2) to 'suspend any or all specific project activity or activities' if certain conditions exist, or (3) to take specific action necessary to bring the determination,

---

2      McCann also argues that the City is substantively appealing from the "wording of the writ"—an argument the City waived by failing to object in the trial court.  We find no merit to this claim.  The adequacy of the City's return necessarily depends on the orders expressed within the writ, and therefore a discussion of the language within the writ is necessary to determine whether the writ has been fully satisfied.  (See *POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 63 [interpreting the meaning of a writ of mandate de novo to determine if the agency's actions complied with the terms of the writ].)

8

finding or decision tainted by the CEQA violation into compliance with CEQA." (*POET, LLC, supra*, 218 Cal.App.4th at p. 757.) The court issuing the writ has discretion to choose which of the three mandates is appropriate under the circumstances and may impose more than one mandate. (*Ibid.*)

Once a peremptory writ of mandate has been issued, the court "should order the agency to file a return by a date certain informing the court of the agency's actions in compliance with the writ. [Citations.] [Section] 21168.9, subdivision (b) states, in relevant part, 'The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division.' This statutory provision for the retention of jurisdiction reflects the rule that a court issuing a peremptory writ of mandate retains jurisdiction to determine the adequacy of the return and ensure full compliance with the writ." (*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479 (*Ballona*), citing *Carmel–by–the–Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 971.)

We independently interpret the terms of the peremptory writ of mandate as a question of law, but we review the adequacy of the City's return under an abuse of discretion standard of review because the "attempt to comply with the writ is, for all practical purposes, an attempt to comply with CEQA." (*POET, LLC, supra*, 12 Cal.App.5th at p. 62.) In this context, an abuse of discretion "is established 'if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' [Citations.]" (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426.)

9

**B. Analysis**

In *McCann I*, we directed the trial court to, "issue a peremptory writ of mandate directing the City to set aside its March 5 and March 7, 2019, resolutions adopting the mitigated negative declaration, the mitigation monitoring and reporting program, and establishing the relevant utility undergrounding districts." (*McCann I, supra,* 70 Cal.App.5th at p. 98.) This order was authorized by section 21168.9, subdivision (a)(1), which permits the court to order a public agency to void a "determination, finding, or decision," in violation of CEQA, in whole or in part. The trial court complied with our order and issued a peremptory writ of mandate directing the City to "set aside" the resolutions approving the disputed MND undergrounding Projects. The writ did *not* direct the City to perform any other remedial action aside from rescinding the resolutions approving the MND projects and halting any further activity on the projects that may alter the environment—nor did we direct the trial court to order any further remedial action in *McCann I.*

Accordingly, because the City complied with the trial court's writ of mandate, as directed in our disposition in *McCann I*, we perceive no abuse of discretion by the City. The City's return included Resolution No. 314160, which affirmed that the San Diego City Council rescinded the resolutions approving the MND Projects. The City's recission of the resolutions satisfies the writ's order that the City "set aside" the March 5 and 7, 2019, resolutions. Voiding a project approval is a remedial mandate authorized by section 21168.9, subdivision (a)(1), and we conclude that the City has adequately complied with this section by rescinding the MND Projects approvals. (See *Gentry v. City of Murrieta* (1995) 36 Cal.App.4th 1359, 1423 [court issued a peremptory writ of mandate ordering the agency to void a project approval

10

under section 21168.9, subdivision (a)(1), but did not require further corrective action].)

Section 21168.9, subdivision (c), confers equitable powers on the trial court to issue orders to compel compliance with a peremptory writ of mandate (§ 21168.9, subd. (c); *POET, LLC, supra,* 12 Cal.App.5th at pp. 86-87), but once an agency has fully satisfied the writ, the trial court no longer has continuing jurisdiction over the matter. (See *County of Inyo* (1977) 71 Cal.App.3d 185, 205 [the court has "continuing jurisdiction to enforce the writ *until it is fully satisfied*" (italics added)]; *Ballona, supra,* 201 Cal.App.4th at p. 480 ["the trial court's retained jurisdiction under…section 21168.9, subdivision (b), is *limited to ensuring compliance with the peremptory writ of mandate*" (italics added)].) Because we conclude the City's recission of the MND projects approvals has satisfied the writ, we also conclude the trial court's failure to discharge the writ and terminate its jurisdiction constitutes an abuse of discretion. (See *Golden Gate Land Holdings LLC v. East Bay Regional Park Dist.* (2013) 215 Cal.App.4th 353, 368 ["We review the trial court's exercise of its equitable powers [in a CEQA case] for abuse of discretion."].)

Having concluded the City has satisfied the writ, we next address the parties' contentions regarding the extent of the trial court's continuing jurisdiction to enforce the City's future compliance with CEQA as it relates to the rescinded MND Projects. McCann acknowledges that the MND Projects approvals have been rescinded, but she argues section 21168.9, subdivision (b), authorizes the trial court to retain "jurisdiction over the City's proceedings until it finds that the City has complied with CEQA." The City argues that section 21168.9, subdivision (b), confers only limited continuing jurisdiction on a trial court when "the offending project or CEQA

11

determination is *severed* and some non-offending portion of the approval is left in place."

" '[Q]uestions of interpretation or application of the requirements of CEQA are matters of law' " subject to de novo review. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist*. (2006) 139 Cal.App.4th 1356, 1375.) However, "[i]f the statutory language is clear and unambiguous, our task [of interpreting the statute] is at an end, for there is no need for judicial construction." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083.) Section 21168.9, subdivision (b), clearly and unambiguously states that the trial court retains jurisdiction to enforce a peremptory writ of mandate "*until* the court has determined that the public agency has *complied with this division*." (Italics added). In this case, the relevant provisions of "this division," are section 21168.9, subdivisions (a)(1) and (2), which the trial court relied on to order the City to rescind its project approvals and to take no further action that could damage or alter the physical environment. The trial court did not issue a mandate under section 21168.9, subdivision (a)(3), to

perform any specific corrective action, nor did we direct the trial court to do so in *McCann I*.[3]

Case law has repeatedly applied the language of section 21168.9, subdivision (b), to confer continuing jurisdiction on the trial court to enforce the writ until the writ is satisfied. (See *Ione Valley Land, Air, & Water Defense Alliance, LLC v. County of Amador* (2019) 33 Cal.App.5th 165, 170 ["trial court retained jurisdiction over the matter until the city complied with the writ"]; *Ballona, supra,* 201 Cal.App.4th at p. 479 ["the retention of jurisdiction [provided for in section 21168.9, subdivision (b)] reflects the rule that a court issuing a peremptory writ of mandate retains jurisdiction to determine the adequacy of the return and ensure full compliance with the writ"].) Contrary to McCann's argument, section 21168.9, subdivision (b), does not suggest that the trial court retains jurisdiction in perpetuity based on the hypothetical possibility that the City moves forward with the same

---

3      There are circumstances in which the court may order specific corrective action under CEQA, but in *McCann I* we did no more than order the rescission of the project approvals. (See e.g. *POET, LLC, supra,* 218 Cal.App.4th at pp. 764-767 [providing detailed guidance on the steps necessary to comply with CEQA and compelling the agency to take specific actions].) Although we made clear in our discussion in *McCann I* that the MND Projects will not be in compliance with CEQA unless and until the City performs the "required analysis to determine whether the MND Projects [were] consistent with the Climate Action Plan," we did not direct the trial court to order such an analysis. (*McCann I, supra,* 70 Cal.App.5th at p. 97.) We declined to make such an order because nothing in the record supported a "fair argument that the MND Projects [were] inconsistent with the reduction measures identified by the City in the Climate Action Plan," and we therefore left the matter to the City's discretion to perform the appropriate analysis and determine whether to proceed by an MND or an environmental impact report. (*Ibid.*) Whether the City moves forward with the MND Projects and performs the requisite analysis for CEQA approval is a matter of its discretion and we may not direct the City to "exercise its discretion in any particular way." (§ 21168.9, subd. (c).)

projects in the future.[4] And no provision of section 21168.9, subdivision (b), or any related case law, supports the City's argument that the trial court only has continuing jurisdiction to enforce remedial provisions within a peremptory writ of mandate for projects that have been "severed." The statute simply confers continuing jurisdiction on the trial court to enforce the writ until the agency has complied with its mandates—which the City did here by rescinding the MND Projects approvals.

However, McCann expresses concern that the trial court is, in effect, making a finding that the City has complied with CEQA by discharging the writ. She contends that such a finding precludes future challenges to the adequacy of the City's environmental review of the MND Projects under the principles of res judicata. McCann cites to *Silverado Modjeska Recreation & Park Dist. v. County of Orange* (2011) 197 Cal.App.4th 282 (*Silverado*) in support of her argument and states that "[i]f the court discharges the writ and petitioner does not appeal the discharge of the writ, compliance with CEQA is presumed and considered res judicata." She urges this court to "explain how the doctrine of res judicata would apply to any subsequent litigation challenging the same or substantially the same project" in our ruling.

We decline to conjecture about the ways in which res judicata may or may not affect a future hypothetical project. As we explained in *McCann I*, the MND undergrounding Projects will not be in compliance with CEQA

---

[4] McCann cites to *County of Inyo v. City of L.A.* (1981) 124 Cal.App.3d 1 (*Inyo*), for the proposition that the return to the writ process may last for years. We don't disagree that this timeframe may be lengthy, but in *Inyo,* the process lasted for years because the court ordered the agency to prepare an environmental impact report that was the subject of continued litigation. (*Inyo, supra,* at p. 3.) Here, we did not order the City to prepare such an analysis, but merely directed it to rescind the disputed project approvals.

14

unless the City performs the "required analysis to determine whether the projects were consistent with the Climate Action Plan." (*McCann I, supra,* 70 Cal.App.5th at p. 97.) The City has exercised its discretion not to move forward with the projects and perform this analysis at this time—rather it has simply rescinded the project approvals as mandated by the writ. Whether the City will choose to move forward with the same or substantially same projects in the future is a matter we cannot predict. Nor may we predict, based on the facts before us, the application of res judicata on future claims relating to the environmental reviews already performed on the MND Projects.

We note, however, that McCann's reliance on *Silverado* is misplaced insofar as she argues that the case precludes future challenges to the MND Projects entirely. In *Silverado*, the trial court issued a writ ordering the governmental agency to " '[o]btain a study of the baseline water conditions and quality in the project area,' " and to " '[p]repare and circulate a supplemental EIR disclosing and evaluating the baseline water data collected and tested for, and the baseline water conditions and quality reviewed in, the study....' " (*Silverado, supra,* 197 Cal.App.4th at p. 292.) The writ further ordered the agency to provide public hearings on the actions that it took " 'to comply with this Court's judgment and writ.' " (*Ibid.*) The agency complied with the writ and conducted the relevant studies and public hearings. (*Id.* at p. 295.) After extensive briefing by the parties on whether the studies complied with the writ and CEQA, the trial court concluded the agency had complied and discharged the writ. (*Ibid.*) The petitioner in *Silverado* did not appeal the order discharging the writ, but instead filed a new petition challenging the supplemental environmental impact report. (*Ibid.*) The *Silverado* court concluded the petition was barred by res judicata because the

15

adequacy of the supplemental environmental impact report had been fully adjudicated on the merits in the prior proceeding. (*Id.* at p. 298.)

Here, unlike the water analysis in *Silverado*, there has been no adjudication of the adequacy of the City's GHG emission analysis because, as the City acknowledges, no such analysis has been performed. Because the GHG emission analysis has not been conducted, whether a full environmental impact report will be required under CEQA has not been adjudicated on the merits. (See *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202 [res judicata applies if "the decision in the prior proceeding is final and on the merits"].) The discharge of the writ in this case does not suggest that the City has completed the requisite environmental analysis of the MND Projects, but merely reflects that the City has complied with mandates of the writ by rescinding the project approvals.

Accordingly, because the City fully satisfied the peremptory writ of mandate by rescinding the MND Projects approvals, the writ must be discharged.

## DISPOSITION

The order sustaining McCann's objections and denying the City's request to discharge the writ is reversed. The trial court is directed to vacate that order and enter a new order discharging the peremptory writ of mandate on the grounds the City has complied with the writ by setting aside its March 5 and March 7, 2019, resolutions adopting the mitigated negative declaration, the mitigation monitoring and reporting program, and establishing the

16

relevant utility undergrounding districts.  The parties are to bear their own costs on appeal.

McCONNELL, P. J.

WE CONCUR:


DATO, J.


CASTILLO, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARGARET MCCANN, | D081185 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2019-00011813-CU-TT-CTL) |
| v. | |
| CITY OF SAN DIEGO et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed July 19, 2023, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1102(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.



McCONNELL, P. J.

Copies to:  All parties

2